*87 Tuesday, March 15. The Judges delivered their opinions.
Judge Tucker.
The bill states, that in 1783, Miller gained with the appellant Woodson, and won of him 1,400/. in officers’ certificates; that Jouitt had won about the same sum of Miller j that Miller requestedWoodson to paj Jouitt the 1,400/. and that Woodson gave his bond to Jouitt for that sum, Jouitt at the time knowing that it was for this gaming debt. This bond was afterwards assigned to Barrett and Co. who say they had no information that the bond was for gaming at the time of the assignment, nor does Barrett, who alone answers, admit that it was founded on a gaming consideration. The proof that it was, is very abundant.
The question upon this case is, whether the assignee of a bond given for money won at gaming, for a valuable consideration, without notice of the nature of the debt, is barred from recovering the money, by the act to prevent unlawful gaming.
By the acts of 1748, c. 25. and Oct. 1779, c. 42. all promises, agreements, notes, bills, bonds, or other contracts, judgments, mortgages, or other securities, or conveyances whatsoever, where the whole, or any part of the consideration shall be for money, or other valuable thing whatsoever, won at gaming, or for the repayment of money lent to game with, shall be utterly void, frustrate, and of no effect, to all intents and purposes whatsoever.
It may not be amiss to observe, that although our statute is generally supposed to be a transcript from the statute of 9 of Anne against gaming, yet there is a material difference between them, in the insertion of the word contracts, in our law, which was omitted in the statute of Anne. It was upon the omission of that word in the statute, that the judgment in Robinson v. Bland,(a) proceeded. But, even in that case, the Court held, that the bill of exchange which Sir John Bland drew upon himself in France, payable at ten days sight in England, was a void security, and *88 no recovery could be had upon it against his administrator, he dying in France without returning. In the case of Bowyer v. Bampton,(a) it was decided, that the innocent indorsee of a gaming note cannot recover against the drawer. And the same decision was made as to the innocent indorsee of a bill of exchange drawn for money won at gaming, in Lowe v. Waller.(b) The decisions in the cases of Rawden v. Shadwell,(c) and Bones v. Booth,(d) proceed upon the same principle, that the security is absolutely void. Now where any instrument is absolutely void in its creation, it cannot, I conceive, be made valid by any subsequent transaction immediately arising out of it. It is not like a security given by an infant, which is only voidable; for that may be revived by a promise after he comes of age. In the cases of Buckner v. Smith, and Hoomes v. Smock,(e) this Court relied on particular circumstances in the conduct of the defendants respectively, which distinguished those cases from the general principle settled in those I have before cited. There are no such circumstances in this: the naked question is, whether the mere want of notice that a bond or other security was given for money won at gaming, will entitle the assignee without notice to recover in an action brought upon a bond. I am of opinion that it will not, and I conceive that a contrary decision would be tantamount to a declaration that the statute against gaming was of no force or obligation whatsoever. Those who deal in bonds, if thus given, or w ho allow a valuable consideration for them to persons, with whom, or whose circumstances, they are unacquainted, ought to be well assured that they are such as are not illegal. If they take them upon the credit of the assignor, they may have their remedy against him, if they have given a valuable consideration, and the money is not recovered. The circulation of gaming bonds is an evil no l'ess to be discountenanced than the giving of them. And no means are more likely to prevent the giving of them than to put an effectual stop to their circulation. I am therefore of *89 Opinion, that the decree of the Chancellor ought to be reversed, and a perpetual injunction awarded, as to both judgments; for the first against Woodson being void, no damages can be given against the sheriff for any errors he might have committed in levying the execution founded thereupon.
Judge Roane
said it was a plain case; and that, in his opinion, there was less reason for taking it out of the statutes against gaming than appeared in the cases cited from Washington.
Judge Fleming concurring, the decree was reversed^ tod injunction made perpetual.

 2 Burrow, 1077. and 1 W. Black. Sep. 234. 256.

 2 Strange, 1155.

5) Douglass, 713.

 Ambler, 269.

 2 W. Black. 1226.

 1 Wash. 299. and 389.