TYEER, J.
Thomas J. Perkins, in September, 1836, executed his bond to Cary Clements, wife of Isham W. Clements, for the sum of $580. The money for which the bond was given, was handed over to the obligor, in the absence of the wife, by the husband. In 1840, the husband died, and the app'ellant, the obligor in the bond, became the administrator of the husband; and then the wife instituted a suit against him on the bond, and recovered judgment in 1845. Perkins applied for and obtained an injunction to this judgment, which was dissolved, and he then appealed. In his bill praying the injunction, he alleges as grounds for the interposition of a court of equity, that payments were made to the husband on account of this bond, and further that as the bond, from ignorance on his part, bound him individually, when in fact it was the intention of the parties to bind the firm of Thomas J. Perkins & Co., the bond having been signed Thomas J. • Perkins & Co., and the money for which it was given having been appropriated to the use of the firm; that át the time the bond was executed, the husband agreed with him, ■ and thereafter with the other firms mentioned in the bill, that his dealings, &c., with the firms, &c., should be set-off against the bond. If, then, the dealingslcof the husband had been with the obligor,tSierkins individually, the law made suclT .Osalings a set-off against the husband in k suit by him against the obligor, because there would have been mutual debts due in the same right. But as the dealings with the firm by reason of being a joint demand, could not be set-off against a separate demand, the agreement controlled the law, and placed the joint demands on the same footing as mutual debts due in the same right; that is, constituted the joint demands set-offs against the bond. When a boniTi's executed to the feme-during cover-ture, it is the property of the husband; and in a court of law, he may sue alone on the *bond, or he may join the wife. If he elects to sue alone, he thereby disagrees to the wife’s interest, and defeats her title by survivorship. If he does not sue, but receives payment of the bond, he also defeats her title by the survivorship; and, if the wife being in possession of the bond, institutes suit on it after the death of the husband, the plea of payment to the husband by the obligor, will be a valid defence to the action. This rule of law is not controverted. If, then, the obligor has legal set-offs against the bond, or set-offs which though originally were not set-offs, but which have become so by virtue of an agreement; in a suit by the husband, they will be set-offs against the bond in a court of law, and if set-offs against the husband are in contemplation of law, a reduction into possession of the chose in action of the wife by the husband; the ob-ligor can equally make that defence in a court of law against the wife, as well as against the husband’s suit; so that if these set-offs be a valid defence against the title of the wife by survivorship, the obligor had a full, adequate, and complete defence at law, which he failed to make, and that without excuse. Eor, as to that point, the allegations in the bill are denied by the answer, and there is no proof in the record to' sustain-them. ■ There is then no ground whatever for'the interposition of, a court of equity; but if the appellant islet into'a court of equity, what claim has he to relief? He tells us in his bill of complaint, that these various demands which he urges as offsets, were, according to the understanding of the parties, settled, by being agreed to be set-off against the bond ; and the bond therefore was discharged by the application of the set-offs. He states in his bill, on oath, and he calls on the parties to whom these set-offs were originally due, and who were equally interested with him, as witnesses, and they testify to the same fact in 1847, when their depositions were taken. If this be true, then, in their view of the facts and the law, they had no claim against the estate of the husband, because the claims were settled, by being set-off *againstthe bond. And yet in 1843, the record shows that the owners of these claims, now sought to be set-off *505 against the bond, asserted their claims in a court r lave as demands against the estate of the .sband, represented by the appellant, wh , was the obligor in the bond to the wife and the complainant asking the injunction in the court below, and recovered judgment against the estate of the husband, the appellant making no successful resistance against the demand, if in fact he made any resistance at all; and in 184S, the administrator of the husband, and the defendant against whom judgment was obtained, states in his bill on oath, and the plaintiffs in whose favor the judgments were obtained against the estate, testify in their deposition, that, according to their understanding, there was nothing due from the husband’s estate when they instituted these suits and obtained these judgments. Their acts and their evidence cannot be reconciled. I am, therefore, of opinion that the appellant, if he had any defence, could have asserted it in a court of law, and having failed to do so without excuse, he has no claim to the interposition of a court of equity; or, if in a court of equity, he is not entitled to the relief prayed. I am for affirming the judgment with costs.
THOMPSON, J.
Two questions have been discussed by the counsel. Hirst, upon the merits — whether the chose in action on which the judgment injoined was founded, whilst in legal contemplation or in fact under the dominion, control, and power of disposal of the husband, was virtually paid and discharged by supplies of merchandize and advances of money, sold and advanced, and by express contract agreed to be applied to its extinguishment or discharge, so as to entitle the obligor to a valid defence either at law or in equity; or whether the wife, upon the death of the husband, became entitled to it by survivorship. It was not contended, as it could not be, if it was the wife’s money, or in the language of the law, if she were the owner of the consideration *given for the bond or the meritorious cause of the action, that her right of survivorship could be intercepted or defeated by offsets; and, secondly, if the plaintiff had a valid legal de-fence, and has failed to make it, whether he has alleged and proved a sufficient excuse for the failure, to entitle him" to relief in equity by injunction and a new trial in the form of a chancery issue. I am by no means satisfied, that he had a valid defence, either legal or equitable. On the contrary, the inclination of my mind strongly tends to the conclusion that he was entitled to neither, and that so far from being a clear case for him upon the merits, it is at best a doubtful one.
But if defence he had, it was clearly a legal one, according to his own showing, by the testimony of his own witnesses, to wit: payment and discharge by money and goods in the life-time of the husband, when, as it is alleged, the obligation was his if he chose to assert his marital right, and subject to his power of disposition and extinguishment by payment, release, or other direct manner of discharge, excluding of course the collateral and indirect one of offsets. The case of May v. Boisseau, 12 Leigh, 512, is authority for holding that this was a legal defence, unless it can be distinguished from that case by the difference in the character of the writings upon which the two actions were founded, being in the case cited a simple contract, a mere memorandum, or acknowledgment, of haying borrowed so much money of the feme covert, and in this an obligation under seal. If the circumstance of the sealed instrument would have prevented the de-fence, it could only have been upon the ground, that the obligors were precluded by the estoppel operated by the specialty from going into the consideration, and proving a different one from that it imported, to wit: that it was the money of the wife and not of the husband; and this difference in the two cases, by the bye, suggests a question worthy of very grave consideration upon the equity side of his case; if the effect of the estoppel was ^sufficient to preclude a legal defence, could it and ought it not in a court of equity to be as effectual to disentitle him to relief in that forum; whilst creditors, who could show they were defrauded, hindered, or delayed of their debts against the husband by this obligation, whether given for money of the husband, or it may be, if even given for her own money, or for a consideration of which she was the meritorious cause, would not be estopped in equity from en-quiring into the consideration and impeaching the transaction.
I cannot perceive upon what principle a court of equity, even though it had been a purely voluntary direction of the husband, could allow a party, who had full knowledge of this donation, and in truth recognized and assented to it by borrowing it, and promising under hand and seal to pay it to the wife, to deal with and become a creditor of the husband afterwards upon the faith of that obligation ; and if it would not in case of a voluntary donation, much less would it in a case like the present, where there is every reason to presume it was the money of the wife. She swears, in direct response to an interrogatory, that it was her money and how she became entitled to it; her answer is corroborated by all the probabilities and circumstances of the case, and there is not a title of proof offered by the appellant to the contra^". It may be true, that the husband could have received payment for it and by his receipt, or by release, or other acquittance, have discharged or released the obligation. But suppose this had been a promissory note of hand, instead of a sealed instrument, so that there was no estoppel to an enquiry into the consideration, and the parties were before a common law court and jury upon the issue joined in May v. Boisseau, is it not doubtful, to say the least, whether the verdict and judgment ought not to be the same way as in that case, in favor of the *506 surviving- wife. In that there was a disposition or the exercise of the marital power and dominion over the chose, by accepting the endorsement of a credit on his bond to May, secured by trust deed for the ‘amount, and a receipt for the same amount bearing, according to my recollection, the same date as the memorandum or acknowledgment of a loan by the wife, both with a condition, it is true, inserted for the benefit of May, that they were not to become absolutely and unconditionally binding upon him, until the husband obtained and surrendered the evidence of debt given by May to the wife. Yet the Court of Appeals sanctioned the judgment of the court below, excluding these evidences of discharge from the jury, offered to be given in evidence by May, and the instruction of the court below, without any evidence of consideration other than that which the law would imply from the memorandum or acknowledgment itself, that the chose survived to the wife, and the jury under that instruction found for her. Here, according to the evidence of plaintiff’s witnesses, the husband was to deal at plaintiff’s store and with the succeeding firms, and to run up accounts for moneys, orders, and goods, upon the faith of this bond, 'which were to be applied as credits to the bond, and accordingly such accounts were raised with the various concerns, amounting in the aggregate to a sum nearly equal to the bond, upon most if not all of which the husband was sued and judgments recovered, but the credits .were never so entered or applied; and not having been, is there not as good ground for holding that this was a mere executory agreement on the part of the husband to apply credits on the bond for his accounts, never executed by making the application and entering' the credits, and therefore insufficient to intercept or defeat the wife’s right, as there was in May v. Boisseau to hold that the receipt and indorsement could have no such effect; and besides do not the acts and conduct of the parties in this cause give to the dealings and accounts between the plaintiff and his associates, and Clements, the collateral character of offsets rather than direct payments. The greater solemnity of the obligation in this case moreover gives the wife an advantage over Mrs. Boisseau, and in addition to all this, all the ^material facts of the plaintiff’s de-fence, to wit: the alleged agreement and delivery of goods and money, relied on to support the plea of payment or discharge, are proved by the depositions of witnesses, in my opinion, directly interested and incompetent, in answer to leading questions, which could not have been received in the court below, if excepted to on both grounds; and though the exception cannot be taken in the appellate court for the first time, it is a circumstance worthy.of consideration, and has a legitimate bearing upon the character of the legal defence sought to be set up in a court of equity.
If it be said, as I believe it was said, that May v. Boisseau is not a binding authority because the decision of two judges only, the answer is, the whole court concurred upon all the points in that cause at all affecting or any way material to this; the only difference between the dissenting judge and the other two being, whether the court should have passed upon the question of the consideration of the note, as jt did by its instruction to the jury, holding that it was sufficiently established by legal implication from the paper sued on itself without other evidence, or should have submitted that question to the jury — a majority of the court being of opinion, that it sufficiently appeared, or was so properly a subject of legal implication as to justify the instruction given in favor of the wife’s right of survivorship, and Judge Allen rhe dissentient, being of a different opinion. If instead of a promissory note, or such a paper as Mrs. Boisseau sued on, which, according to Judge Cabell, was beneath the dignity of a promissory note, incapable of sustaining an action of debt, and fit only to be given in evidence in an action of as-sumpsit, (and for which reason he doubted whether the declaration would not have been bad on demurrer, if tendered at the proper stage of the pleadings,) it had been an obligation under seal as in this case, can there be a doubt but that the court would have been unanimous in that case. I think not. ^Without intending, then, to be understood as expressing any judgment or settled opinion upon the merits, such as it would be my duty to do, if the case made out by the plaintiff were before me in a court of law or in a court of equity upon original bill, if that were the proper forum, but rather to affirm and assign reasons in support of the proposition with which I set out, that so far from its being a clear case for the plaintiff upon the defence alleged and proved, it is a doubtful one, to say the least, I proceed to the consideration of the question of jurisdiction. Andas upon that question we are generally precluded from looking into the merits, and for that reason it is generally first tobe considered, it may be demanded of me why the necessity or propriety of saying so much, if any thing, upon the merits. The answer is at hand. There are some cases in which the solution of the question of jurisdiction materially depends upon the merits, as it sometimes does in bills for injunctions to judgments praying new trials upon the ground of failure or omission to defend at law, in which relief is denied not so much on account of a failure to allege and prove a valid excuse for the failure, as the character of the defence however clearly proved, or the doubtfulness of the proof of defence, however meritorious its character,- and although the decision of the case against the jurisdiction does not need that principle for its support, yet the consideration of the merits, so far as to determine whether the defence is clearly established or remains a matter of doubt and uncertainty, *507 if it have no direct bearing upon the question and will not effect the decision one way or the other, is pertinent and relevant, if for no other purpose than that of vindicating the rule of jurisdiction established in such cases, so much complained of by counsel on account of its rigid harshness and inexorable application by the courts, from such objections to its original adoption or its application in this, however obnoxious to them in a case where the de-fence is clearly made out, and is of a character meriting the indulgence and favorable consideration of a court of conscience.
*The rule is, that where a party litigant has been impleaded in a court of law, having a plain legal defence, which he has failed to make, and against whom judgment has been rendered, he will not be entertained in a court of equity, unless he allege and prove, (if denied or not admitted,) a sufficient excuse for the failure, no matter how clear his case upon the merits, and how great the hardship, (and in its nature penal, the consequence as involving the loss or forfeiture of a just defence,) of being denied relief in a court of equity. This rule, or principle, is so well settled by a uniform and almost unbroken series of decisions of our own court of last resort, early and late, coming down to the very last volume of Grattan, (the 10th,) as to render it unnecessary to do more than to refer to a few of the latest cases. See Oswald, Deniston & Co. v. Hancock’s adm’r, 4 Rand. 19; Faulkner’s adm’r v. Harwood, 6 Rand. 125; Slack v. Wood, and Allan, Walton & Co. v. Hamilton, 9 Grat. 40, 255; George v. Strange, and Meem v. Rucker, 10 Grat. 499, 506, and the earlier authorities therein cited and approved.
The rigid and inexorable enforcement of the rule, if not the rule itself, in all cases, has been criticised and complained of by counsel, and it cannot be denied that in some of the cases reported it appears harsh ; and in one of the latest, in which I sat in the court below, (Meem v. Rucker,) and in which I was of opinion it was a proper case for the relaxation or dispensation of the rule, yet it is my duty, as it is my pleasure, to submit to the decision; and, moreover, to add, that upon a more mature consideration, the preponderance and weight of authorities, both English and American, seem to be in favor of a strict adherence to the rule, as best calculated to effectuate the principles and policy of the law. When the law is plainly or intelligibly written, or expounded and settled by competent judicial authority, and not repugnant to the fundamental law, I always yield a willing obedience to the maxims, ita lex scripta, and stare decisis, without the observance of which *the law is divested of one of its most important attributes, becomes fluctuating and capricious, and instead of being a steady light to guide, or shield to protect, becomes an ignis fatuus to mislead, or a snare to entrap the citizen. All general rules of law must, in their operation, be productive of hardship and injustice in particular and individual cases. By making every case of hardship an exception, we virtually abrogate the rule itself, and make hard cases what they have been not inappropriately termed, “the quicksands of the law.” Of necessity, we have to choose between two alternatives, that of the partial evil or inconvenience of a rigid adherence to the law or to general rules, or the general, nay, universal evil or inconvenience of no rule, no law, but the wild discretion of the judge. Vain and abortive have been, and must ever be, the attempts to prevent or remedy all injustice by undertaking the task of essaying to do perfect justice in every case upon its own peculiar principles and circumstances, regardless of general rules. The repugnance to this rule and its rigid enforcement, has its origin in a desire, so natural to a just mind, that justice should prevail in every case, and has its prototype in those sentiments of the early English judges, under whose influence or impulses they explained away, or partially repealed, the statutes of frauds and perjuries, and of limitations, and whose construction of those statutes has so often been the theme of regret in the works of text-writers and the opinions and decisions of succeeding judges.
The counsel for the appellant endeavored to distinguish and take this case out of the influence of the rule, and to show its inapplicability here, and argued that it was only applicable as between the parties litigant in the law court, the plaintiff and defendant in the judgment, and those claiming under them, and that here a third party, quoad hoc, a stranger to the legal proceedings, the appellant, in his character of administrator of Isham W. Clements, as well as in his own right, intervenes, and in his character of administrator, *if not individually, is entitled to all the immunities of a perfect stranger, notwithstanding the recovery was had against him in his own right, and in his own right, in part, he complains.
The distinction appears to me to be shadowy and unsubstantial, because it is only in his individual or social character, as the member of his concern, he has been aggrieved and has cause of complaint, if aggrieved at all. It certainly cannot be held that his interests or duties as the representative of the estate of I. W. Clements are involved in the question whether or not Mrs. Clements shall be allowed the benefit of her judgment, although it is very apparent the interests of other creditors of the estate, or himself individually, or as partner, or the heirs and -distributees of the estate, may be affected; but these interests confer on him no right to claim exemption from the rule, either as administrator or as individual. When they come asking dispensation or exemption from the rule, and seek to impeach the judgment in favor of Mrs. Clements, either by in *508 junction or original bill, it will be time enough to consider their pretensions.
In this case, according to the rulings of the courts in all the cases referred to, nothing approximating a sufficient legal excuse for failing to defend at law is alleged, and, such as it is, it is flatly denied by the answer, and not a tittle of proof adduced to sustain it. Hot only is the excuse alleged denied and not proved, but the answer alleges that the defence was in fact made, or attempted to be made, and overruled by the law court; and after being overruled, and after great and vexatious delay, both before and after the over-ruling of the defence, the plea was waived without any inadvertence, mistake or misappre,-hension whatever, on the part of the counsel waiving it; and for the truth of these allegations she avouches the record of the law court, without professing to make it an exhibit with her answer. But that record forms no part of this, or is not copied in it, if it should have been; and as it was more the *duty of the plaintiff than the defendant to have made it an exhibit, and thereby a part of the record, he has no right to complain if from the fact of his failure to produce it to confront the answer, if false, we draw inferences and presumptions in favor of the verity of the answer in that behalf; and this, the more especially, since he has failed to introduce an iota of proof in support of the insufficient excuse alleged and flatly denied.
This, then, is a clear case against the jurisdiction of the court of equity, upon the ground of failure to allege and prove a sufficient excuse; and the fact that it is both a doubtful defence relied on in reference to its proof, and, if proved, founded upon sheer law, disarms the rule of its severity and removes any repugnance to its enforcement on this occasion. I am, therefore, for affirming the judgment of the court below with costs.
FIFGD, P.
In 1836 Thomas J. Perkins & Co. borrowed, for the use of their firm, $580. The money was handed over to them by Isham W. Clements, and for the repayment of the money Perkins executed a bond under seal, in the name of Thomas J. Perkins & Co., payable to Mrs. Cary Clements, the wife of Isham W. Clements. This money arose from the sale of her mother’s dower-land, and was regarded by the parties at the time as the money of Mrs. Clements, as will appear in the sequel of this opinion. But it was agreed between Clements and Perkins, that the subsequent dealings of Clements with the firm should be credited on the bond. These dealings, on the 24th February, 1837, amounted to $108 64, for which sum Clements executed his bond to Thomas J. Perkins & Co. About this time the partnership of Thomas J. Perkins & Co. was dissolved, and the mercantile business was carried on at the same place by Daniel Perkins, one of the two partners of the Late firm. At a subsequent time, Daniel Perkins associated with himself Joseph K. Bowles, and then the business was conducted in the name of Joseph *K. Bowles & Co. The 'appellant alleged in his bill, and proved, that Isham W. Clements agreed with Daniel Perkins and Joseph K. Bowles & Co., that the amount of his dealings with them should be paid out of the bond also. Isham W. Clements died in 1840, and Thomas Perkins, the obligor in this bond, became the administrator of Isham W. Clements. The precise locality of the bond, at the time of the husband’s death, does not appear. The accounts given of it by. Mrs. Clements and Thomas J. Perkins do not agree. Perkins says that he found it amongst the papers of his intestate, and stated in the presence of witnesses that the bond had been paid off; but inasmuch as it was to be regarded as his bond, he felt a delicacy in retaining the bond in his hands, and therefore, after taking a copy of it, the bond was handed over to Mrs. Clements. Mrs. Clements, in her answer, says that her husband brought the bond and delivered it to her, and that she had always held possession of it from the time it was given. I do not deem it a matter of any consequence whether, at the time of Clements’ death, the bond was in his hands, or in the hands of his wife. The mere possession of the bond gave no title to it. The possession of a bond could, under any circumstances, amount to nothing more than presumptive evidence of ownership in the holder. That presumption, in this case, would be repelled by the fact of the money being the property of his wife, and the circumstances attending the execution of the bond, (in relation to which Clements had acted as the agent of his wife,) and his subsequent possession should be regarded as the possession by an agent of the property of his principal.
.The bond having been executed under seal, it was to be sued on at law as the obligation of Thomas J. Perkins only. The suit was brought, therefore, in the name of Cary Clements, against Thomas J. Perkins. It was brought in the Circuit Court of Goochland county, in the progress of which the defendant appeared and filed a plea, which was afterwards withdrawn, and judgment *rendered against Perkins in favor of Mrs. Clements for the amount of the bond, with interest and costs.
Perkins then filed his bill on the chancery side of the court, in his own* right and as administrator of Isham W. Clements, setting forth the bond from Isham W. Clements to Thomas J. Perkins & Co. for $108 64, two judgments in the name of Daniel Perkins against him as administrator of Isham W. Clements, and one other in the name of Carr Fleming, for the benefit of Daniel Perkins, one other in the name of Joseph K.Bowles & Co,, and three receipts, amounting to $129 65, for money paid by Daniel Perkins for, and at the request of, Isham W. Clements. For the amount of all which, Perkins claimed to be entitled to have relief against the judgment recovered by Mrs. *509 Clements against him. His claim to be relieved as to the amount of Clements’ bond to Thomas J. Perkins & Co. for $108 64, can be disposed of in a few words. It having been agreed, as above stated, that the subsequent dealings of Clements with Thomas J. Perkins & Co. should be credited on the bond to Mrs. Clements, this could have been pleaded as an offset or payment in the action at law; for failing to do which the plaintiff has not shewn by proof any sufficient excuse, and, consequently, has now no right to have this matter litigated in chancery. See George v. Strange’s ex’or, 10 Grat. 499, and Meem v. Rucker, 10 Grat. 506. The other subjects afforded no ground of defence in the action at law, nor do they furnish any ground for relief in equity, as I will proceed to shew.
The depositions of sundry witnesses have been taken and filed by the appellant, but it does not appear from any of the depositions whether the money which was borrowed, and for which the bond was given, was the property of Mrs. Clements or her husband, but her right to it, for the purposes of this suit, is established by the pleadings in the cause. The appellant, in his bill, calls upon Mrs. Clements to say 1 ‘ What consideration induced her husband to take the bond in her %ame.” Her answer is in these words: ‘ ‘The complainant cannot be ignorant of what were the habits of her unfortunate husband, the said Isham, and how he squandered his substance with the said complainant; the great quantity of intoxicating liquors he purchased of the said complainant; and how unfit he became by it to attend to any business.” Here is a very sufficient reason assigned for making the bond payable to Mrs. Clements. And if the appellant did know of it, as Mrs. Clements in substance says, and of which there can be but little doubt, it was w ith an ill grace that the appellant went into a court of equity to contest the right of Mrs. Clements to this fund. The appellant also called on Mrs. Clements to say “whether the money lent was not the money of the said Isham W. Clements, and how she became entitled to it.” To this interrogatory she gave a plain and direct answer, in these words: “The money for which this bond W'as given was money arising from the sale of land coming from her father to her, and from this defendant’s interest in her mother’s dower in her father’s estate.”
These responses to the allegations of the bill, in the absence of proof to the contrary, are clearly sufficient to establish the right of Mrs. Clements to the money, as between the parties to this suit. But this is not all. Does not the bond itself establish the same fact, and so conclusively, that Perkins, the obligor, should be estopped, both at law and in equity, from controverting Mrs. Clements’ right to the bond?
This bond, in the lifetime of Mrs. Clements, was a chose in action, which could have been released by the husband, or discharged by payment to him, or to an as-signee, in the lifetime of the husband. In either case, the rights of Mrs. Clements would have been defeated. Neither of these things had been done; consequently, upon the death of the husband, this chose in action became the property of the wife. Her title to it is paramount, not only to the claims of the administrator of her husband, but also to the claims of his creditors.
*In relation to the debts contracted by Clements with Daniel Perkins, and to the money paid by Daniel Perkins for Clements, and to the debt due Jos. K. Bowles & Co., I am at a loss to perceive any right in the appellant to have relief in respect to those matters. But let it be conceded that, as the administrator of Clements (whose personal estate is said to be exhausted, or nearly so,) he has that right, and that those claims have been properly presented for consideration in this case; then, I say, the plaintiff is not entitled to have any relief on account of those claims, for this reason. Suppose that Isham W. Clements did agree that those claims should be paid out of the bond due to his wife, (a fact testified to by the two interested parties, Daniel Perkins and Joseph K. Bowles, who, of course, knew all about it,) then, I say, the agreement, at most, was only an equitable lien upon, or an assignment of, so much of the bond as was necessary for the payment of those claims, which, not having been reduced into possession by Daniel Perkins and Joseph K. Bowles & Co. in the lifetime of Isham W. Clements, the chose in action, or bond, survived to the wife, and became exonerated from the agreement of the husband that those claims should be paid out of the bond. See Ashby v. Ashby, 14 Eng. Law Jour. Ch. 86, and cases there referred to.
I am of opinion, that there is no error in the record.
Decree to be affirmed with costs.
GIDMER, J., was for affirming the decree, on the ground of the want of jurisdiction.
CBOPTON, J., concurred in the opinion of the court.