Wytheville.

BARNETT AND ALS. v. BARNETT AND ALS.

JUNE 16th, 1887.

1. EQUITABLE JURISDICTION AND RELIEF—*Sham bond—In pari delicto.*— Where one person executes his bond to another to enable him to use it as a means of inducing innocent strangers to buy certain patent-rights, the obligor can obtain against the bond no relief in equity—he being *in pari delicto* with the defendant.

2. IDEM—*Legal defense.*—In suit in equity obligor cannot set up that he had discharged the bond wherein the judgment sought to be relieved against was founded, that being a defense he ought to have set up in the action at law.

3. IDEM—*Laches.*—Where the bond averred to have been fraudulently procured was executed in 1879, and the suit for relief against it was not instituted until 1885, whilst the bill gives no excuse for the delay, the plaintiff is precluded from relief by his *laches*.

4. IDEM—*Rescission— Misrepresentation.* — Misrepresentations made to obligor on former occasions and for different purposes, are not to be relied on for rescinding the contract, not being part of the same transaction.

5. IDEM—*Parol evidence—Cotemporary agreement.*—Unless there be fraud parol evidence is not competent to prove that when obligor executed the bond obligee promised not to sue on it. *Tanner* v. *Lucas*, 13 Gratt. 705.

Appeal from decree of circuit court of Montgomery county, entered May 20th, 1886, in a cause wherein Thomas M. Barnett and R. C. Kidd were complainants and John Wm. Barnett and Samuel C. Barnett were defendants.

The object of the suit was to obtain relief against a

judgment rendered in the said court at its November term, 1884, in favor of the appellee, John W. Barnett, against the complainants in the bill, who were the appellants here. The judgment was founded upon a certain writing obligatory, executed by the appellants, a copy of which was exhibited with the bill, and which was as follows:

"We bind ourselves to pay to J. W. Barnett twelve hundred dollars in satisfactory notes, for the sale of territory in the counties of Buckingham, Cumberland, Fluvanna, Albemarle, and all of Bedford except the territory now sold to Hopkins & Thaxton, one precinct to P. Cofer, and about five farm rights, during the term of twelve months, as witness our hands and seals this third day of June, 1879.

"R. C. KIDD.          [Seal.]

"THOS. M. BARNETT. [Seal.]"

The prayer of the bill was that the enforcement of the judgment, upon which an execution of *fi. fa.* had been sued out, be enjoined; that the judgment by proper order be vacated and annulled, and for general relief. And the prayer of the bill was based on several grounds.

The first was that the appellee, John W. Barnett, being the owner of a certain patented process for curing tobacco, the appellants, in the early part of the year 1879, agreed with him to act as his agents in selling patent-rights, upon certain terms; that he represented this process to the appellants as possessing very great merit, and that tobacco cured thereby was more salable, and commanded a much higher price than the same quality of tobacco cured by the ordinary process; and that having thus acted as agents for several months, the appellants, on the third of June, 1879, executed the writing obligatory mentioned in the bill. The bill then alleged that it was distinctly understood at

the time that the said writing was not to represent a real obligation, but that it was taken from the appellants to serve as an inducement to others to buy patent-rights, and that after it was taken the complainants continued to act merely as agents of the defendant, John W. Barnett, and not otherwise.

The second ground upon which relief was prayed was, that if the said writing should be held conclusive evidence of a contract between the parties, the contract ought to be rescinded and the judgment founded upon it annulled, because the complainants were induced to execute it solely by reason of the said representations as to the merits of the said patented process, which representations were false and fraudulent.

The bill also alleged that for the patent-rights sold by the complainants bonds were taken, payable to the defendant, John W. Barnett, and that all the bonds thus taken were turned over by them to the said defendant, except one for twenty dollars, and three others aggregating $175. And, finally, that being advised that their remedy was in equity, the complainants made no defense at law, and judgment went against them.

The said defendant demurred to the bill, and also answered. The answer admitted that the plaintiffs acted as his agents prior to the third of June, 1879, but averred that the transactions between the parties prior to that time had nothing to do with the bond upon which the judgment had been obtained. It denied that the complainants undertook to sell the territory mentioned in the bond as his agents, or that they acted as his agents after the third of June, 1879. On the contrary, it averred that they "bought the said territory, and received from the respondent an absolute deed therefor, which they still retain; that they have never offered to reconvey any part of the said territory, and have sold and conveyed much of it to others, and

cannot place the respondent in the position he occupied when the sale was made to them." It also denied that the complainants had turned over to the respondent any of the bonds taken for the territory which they had purchased, or that the bond upon which the judgment had been obtained was not taken and intended as a valid security. On the contrary, it averred that the transaction was real and *bona fide*, and that the territory mentioned in the bond had been actually conveyed to the complainants, pursuant to the contract. It denied that the complainants had been induced to purchase by any representations of the respondent, and averred that they made the purchase because, while acting as agents as aforesaid, they had tested and ascertained the salableness of the patent, which it also averred was a valuable invention, and not worthless, as charged in the bill.

Testimony was taken, and at the hearing the bill was dismissed by the decree complained of, and the plaintiffs, Thomas M. Barnett and R. C. Kidd, obtained an appeal and *supersedeas* from one of the judges of this court.

*Staples & Sullivan,* for the appellants.

*Phlegar & Johnson,* for the appellees.

LEWIS, P., (after stating the case) delivered the opinion of the court.

1. Upon the theory that the appellants acted merely as agents in the transactions mentioned in the bill, it is very clear that the suit cannot be maintained. For if this theory be founded upon fact (and the bill alleges that it is), and if it also be true, as alleged, that at the time the writing upon which the judgment is founded was executed, the understanding between the parties was that it

was to have no validity as an obligation, but was to be used merely as a blind, or, in the language of one of the appellants in his deposition, as "a sham," by which to induce others to buy patent-rights, then a palpable fraud was attempted to be perpetrated upon innocent strangers to the transaction, which cannot be countenanced or upheld in a court of equity. In such a case, the parties being *in pari delicto*, the complainants are not entitled to relief; for *potior est conditio defendentis*.

Moreover, since the appellants cannot be heard to allege their own wrong, the case falls within the ancient and well settled rule of evidence, which declares that a written contract cannot be contradicted or varied by parol evidence of what occurred between the parties previously thereto or contemporaneously therewith. And the rule is the same in equity as at common law. 1 Greenl. Ev., sec. 275; *Watson* v. *Hurt*, 6 Gratt. 633; *Towner* v. *Lucas' Ex'or*, 13 Id. 705. In the last mentioned case, the rule and its exceptions were very clearly stated in the opinion of the court, and the question decided was, that, in the absence of fraud, parol evidence was not admissible to show that the obligee contemporaneously with the execution of a bond promised not to enforce it as against one of the parties who executed it.

2. These principles, however, are not controverted by the appellants in this court. In their petition for appeal they chiefly rely on the ground that they were purchasers, and that the bond upon which the judgment is based, was procured by the fraudulent misrepresentations of the obligee, John W. Barnett. And if this allegation be true, then undoubtedly the case is within the jurisdiction of a court of equity, there having been no defense in the action at law. For the statute, which gives to a defendant, in an action on contract, the right to file a plea, alleging fraud in the procurement of the contract, or any other matter

which would entitle him to relief in equity, further provides that if a defendant entitled to such plea shall not tender it, or though he tender it, if it be rejected for not being offered in due time, he shall not be precluded from such relief in equity as he would have been entitled to if the statute had not been enacted. Code 1873, ch. 168, §§ 5 and 6 ; 1 Bart. Ch. Pr., p. 40.

But is the allegation that the bond was procured by fraud sustained by the proofs? We are of opinion that it is not. The rule is that a misrepresentation which will entitle the party misled to a rescission of a contract must have been made as part of *the same transaction*. And the effect of the rule, says a learned author, is that the untruth of a representation made to the party on some former occasion, and for a different purpose, cannot be relied on as a ground either for rescinding a contract or for maintaining an action of deceit. Poll. Cont. 504.

In the present case, it appears from the record that when the appellee employed the appellants as his agents, in the early part of the year 1879, he furnished them with a number of certificates in writing signed by various persons who had used his patented process for curing tobacco, in which the supposed merits of that process were set forth in strong terms of commendation. And he himself represented to them at the same time that the process was far superior to the ordinary process theretofore used in curing tobacco. But there is no evidence whatever that these representations were afterwards repeated on the third of June, 1879, when the sale to the appellants was made and the bond was executed. On the contrary, the appellants themselves—both of whom were examined as witnesses in the case—testify that they were not, and that the trade· was made and the bond was executed on the faith of representations made previous to its date—that is, while they were acting as agents, and before a sale was contemplated.

It is unnecessary, therefore, to decide whether the allegations of the bill, which are denied in the answer, that the representations made by the appellee were untrue, and that the appellants were misled thereby, are or are not sustained by the evidence. It is sufficient to say that the contract in question was not procured by those representations, or, at all events, that they were made in a different transaction and for a different purpose.

Besides, even if the charge of fraud were established, it is by no means clear that the appellants would not be precluded from relief because of their delay. The rule is that where a party has the right to rescind a contract on the ground of fraud, he must rescind at once on discovering the fraud, or as soon thereafter as circumstances will permit; for he is not bound to rescind, and any unreasonable delay, especially if it be injurious to the other party, will be regarded as a waiver of his right. This is well settled. *Grymes* v. *Sanders,* 93 U. S. 55, and cases cited. Yet in the present case the bill was not filed until April, 1885, though the contract was made in June, 1879, and no explanation is given in the bill for the complainants' delay in applying for a rescission of the contract. *Terry* v. *Fontiane, ante,* p. 451.

3. It is also contended by the appellants that the circuit court erred in not directing an issue to try whether or not the bond had been discharged according to its tenor and effect. But this contention is not supported by anything in the record. The bill alleges that all the bonds taken by the appellants for the sales of patent-rights made by them, with certain named exceptions, were turned over to the appellee; but it is not alleged that the bonds so turned over were intended or accepted as a satisfaction of the bond, and the answer distinctly denies that they were. Besides, if the bond has been discharged, as now contended, that was a legal defense, which could have been

made in the action at law, and cannot now be set up in a court of equity. *Marine Ins. Co.* v. *Hodgson*, 7 Cranch, 336; *Hudson* v. *Kline*, 9 Gratt. 379; *Goolsby* v. *St. John*, 25 Id. 146; *Dey* v. *Martin*, 78 Va. 1.

4. The only remaining assignment of error is, that a settlement of the partnership accounts between the parties ought to have been directed. A conclusive answer, however, to this position is that there were no partnership accounts to settle. It is nowhere alleged in the bill that a partnership at any time existed between the parties, and nothing of the kind is established by the evidence. The bill, on the contrary, repeatedly alleges that the appellants in all the transactions therein mentioned "were acting as *agents*" for the appellee, and the allegation of a partnership is for the first time distinctly made in the petition for appeal. No accounts of any sort are asked for in the bill, and to have ordered an account would have been inconsistent with the case made by the bill. The sole object of the suit was to vacate and annul the judgment, and, as we have already seen, the consideration for the bond, upon which the judgment is founded, was wholly independent of and unconnected with the transactions of the appellants as agents. It is very clear, therefore, that the circuit court did not err in not directing an account to be taken, and that the decree must be affirmed.

DECREE AFFIRMED.