IN THE

# SUPREME COURT OF APPEALS

OF

# VIRGINIA.

## 𝕾𝖙𝖆𝖚𝖓𝖙𝖔𝖓.

### HOGE v. FIDELITY LOAN & TRUST CO.

September 15, 1904.

1. EQUITABLE ESTOPPEL—*Defense at Law and in Equity—Concurrent Jurisdiction.*—The defense of equitable estoppel is, as a rule, as available in courts of law as in courts of equity, and the relief is as full and as adequate in the one as in the other, and where the two courts have concurrent jurisdiction of the subject-matter, the defense must be made in that one which first acquires jurisdiction except in those cases where the jurisdiction of the law court is conferred by a statute which provides otherwise.

2. JUDGMENTS AT LAW—*Relief in Equity—When Afforded.*—A court of equity will not enjoin a judgment at law unless the party seeking such relief has failed in obtaining redress at law by reason of the fraud of the opposite party, or inevitable accident, or mistake, and there has been no default on the part of himself or his counsel. The mere fact that a party has mistaken his rights, and so has failed to make his defense at law, does not entitle him to relief in equity.

3. JURISDICTION—*Concurrent at Law and in Equity—Adequacy of Legal Remedy.*—The doctrine that courts of equity, once having acquired jurisdiction of a subject matter because there was no remedy at

VOL. CIII—1

law, or because the remedy at law was inadequate, do not, as a rule, lose their jurisdiction merely because courts of law afterwards give the same or similar relief, is applied in those cases where equity has first obtained jurisdiction, and the defendant seeks to oust its control of the case on the ground that the remedy at law is complete and adequate. It has no application to a case where the two courts have concurrent jurisdiction and the litigant has been first impleaded in a court of law, and the machinery of that court is adequate to give as full and as complete relief as could be given in equity.

Appeal from a decree of the Corporation Court of the city of Roanoke in a suit in chancery, wherein the appellant was the complainant, and the appellee was the defendant.

*Affirmed.*

A demurrer to the original and amended bills of the complainant was sustained. The case made by these bills will best appear from the bills themselves. The original bill was as follows, to-wit:

"To the Honorable John W. Woods, Judge of the Hustings Court, Roanoke, Virginia:

"Humbly complaining, your oratrix, Mrs. Lizzie G. Hoge, respectfully represents unto your honor the following grounds as to the relief hereinafter prayed for:

"On the 11th day of August, 1890, your oratrix sold to F. B. Kemp and L. E. Evans three parcels of land situated in the city of Roanoke, designated as lots 8, 9 and 10, in section 20 of the Lewis addition to the city of Roanoke, and to secure the deferred payments due her amounting to the sum of $1,833.33 she received from the vendees a deed of trust which is dated the 11th day of August, 1890, and recorded in Deed-Book 39, page 65, for the purpose of securing two notes of $916.66, which notes were to become due one and two years

from date. Thereafter your oratrix discounted both of said notes with the Fidelity Loan & Trust Company. Afterwards the said parcels of land were sold by the said Kemp and Evans and the same passed into the hands of various purchasers and finally were purchased by one A. M. Trimmer, who assumed the payments of the notes due to your oratrix. After Mr. Trimmer became the owner of said premises, he applied to the Fidelity Loan & Trust Company holder of said notes to release one of the lots in question, and thereupon the said company caused the said lien to be released as to lot No. 10 embraced in said deed of trust, in which release your oratrix joined at the request of the said company, and which release is upon the margin of the deed-book where said deed of trust is recorded and is in the following words and figures, to-wit: 'The first note secured by this deed of trust having been paid and satisfied, the lien of this deed of trust is hereby released as to lot No. 10 in section 20, Lewis addition, as set forth in this deed.

'Witness the following signatures and seals, this the 4th day of March, 1892.

    '(Signed)  FIDELITY LOAN & TRUST CO.,
         by Jos. T. Engleby, President, holder
         of said notes   E. C. Hoge, Atty. in fact
         for Lizzie G. Hoge.

'Attest: S. S. BROOKE, Clerk.'

"Some weeks thereafter the said A. M. Trimmer applied to your oratrix through E. C. Hoge, her husband and agent in the matter, to release lot No. 9 embraced in said trust, and your oratrix declined to make said release unless instructed so to do by the holders of the note, to-wit, the Fidelity Loan &

Trust Company, and thereafter the said A. M. Trimmer produced to your oratrix's agent a paper writing signed by the said Fidelity Loan & Trust Company through its president, directing your oratrix to make said release and informing her that the indebtedness had been satisfactorily arranged by the said A. M. Trimmer. Thereupon your oratrix's agent went to the courthouse and met Mr. Engleby, the president of said company, who had caused to be prepared the following marginal release, and at his request executed the same, which said second marginal release is in the following words and figures, to-wit:

'A sufficient amount of the second note secured by this deed of trust having been satisfied, the lien as to lot No. 9 in section 20, Lewis addition, as set forth in this deed of trust, is hereby released.

'Witness the following signatures and seals, the 23d day of July, 1892.

'(Signed)  FIDELITY LOAN & TRUST CO.,
by Jos. E. Engleby, President.

'LIZZIE G. HOGE,
by E. C. Hoge, Atty. in fact.

'Attest:  W. F. Bryant.'

"Your oratrix further represents unto the court that thereafter the said A. M. Trimmer caused to be erected a dwelling house upon lot No. 8, and after said dwelling house had been erected, the costs of the same not having been paid to the contractors and furnishers of supplies, suit was brought for the purpose of selling said lot. That in the said cause the indebtedness due to your oratrix, and which had been assigned to the Fidelity Loan & Trust Company was proven and the lien asserted, and that by a recent decision in said cause, the

amount adjudicated to be paid as a credit upon this lien was $600.00.

"Your oratrix further represents that having established the amount of said credit, the Fidelity Loan & Trust Company is endeavoring to collect from your oratrix the remainder due upon said note, and did, on Monday, the 19th day of October, 1896, on the common law side of your Honor's court, ask for a judgment against your oratrix upon said note for $916.66, subject to a credit of $600.00, and that, your oratrix being absent, a judgment was rendered, subject, however, to the right of your oratrix to file any plea that she might be advised that went to the merits of the said cause within one week of the day of said judgment.

"Your oratrix is now advised that her defense to said action can not be availed of at law, and prays to file this her bill of injunction in which she will ask that the said judgment may be set aside, cancelled and discharged so far as it related to her.

"Your oratrix charges that by reason of the representations made by the said Fidelity Loan & Trust Company through its president and agent to the effect that the said indebtedness had been satisfactorily adjusted and satisfied, that she, upon the faith of said representations, joined in the release of lot No. 9, which release she would not have made except upon the assurance that the debt had been satisfactorily arranged for by Trimmer.

"Your oratrix further represents that the premises designated as lot No. 9, which was released on the said deed of trust, was and is amply sufficient in value to pay off the remainder of said notes, and that had said release not been made, the entire indebtedness could and would have been collected by a sale of said lot.

"Being remediless save in a court of equity, your oratrix prays that the Fidelity Loan & Trust Company may be made a

party defendant to this bill and required to answer the same, but an answer under oath is hereby waived, and may the judgment heretofore rendered against her be set aside and discharged, and may such other, further and general relief be granted as the nature of her case may require, and she will ever pray, &c.

"LIZZIE G. HOGE,

"By Counsel."

The amended bill, after reciting the pendency of the suit, copies the original bill in full, and then proceeds as follows, to-wit:

"(3) Your oratrix avers and charges that the said judgment was recovered against your oratrix by default; that the reason she did not make defense to the said judgment was that she had been assured by the Fidelity Loan & Trust Company that the debt sued for had been paid off and discharged so far as she or any liability upon her or her property was concerned, and believing that this defense could better be made in a court of equity than a court of law, she did not appear to defend the said action, not believing it necessary to defend said action your oratrix did not examine to see what credits were allowed to her by the plaintiff in the action at law. Thereupon the said plaintiff, on the 19th day of October, 1896, recovered the judgment aforesaid against your oratrix for the sum of $916.66, subject to a credit of $600.00 as of the ...... day of March, 1894.

"(4) Your oratrix avers and charges that the $600.00 credited on the debt for which the judgment aforesaid was given, is not the credit referred to in the endorsement made by the Fidelity Loan & Trust Company on the margin of the deed book where the deed aforesaid was recorded, hereinbefore incorporated and dated the 23d day of July, 1894. She avers

that the said credit was the proceeds of the sale of lot No. 8, section 20, according to the map of the Lewis addition to the city of Roanoke, and was directed to be paid to the said Fidelity Loan & Trust Company by a decree of the Supreme Court of Appeals of Virginia, rendered in the case of the Fidelity Loan & Trust Company against Dennis, Truitt & Co., reported in 93 Va., p. 504.

"Your oratrix refers to the report of the case aforesaid for evidence of her contention herein, and to the printed record in the said case of Dennis, Truitt & Co., *ads.* Fidelity Loan & Trust Company, which she files herewith as a part of this her amended bill, marked Exhibit No. 1."

"(5) A most cursory comparison of the record of the case of the Fidelity Loan & Trust Company *vs.* Dennis, Truitt & Co., with the second endorsement on the deed book hereinbefore mentioned, will show that the credit of $600.00 allowed in the recovery of the judgment aforesaid is not the credit referred to in the said endorsement. It will be observed that the credit endorsed on the margin of the deed book bears date the 23d day of July, 1892, while the decision of the case of the Fidelity Loan & Trust Company *vs.* Dennis, Truitt & Co. was rendered by the Hustings Court in February, 1894, and reversed by the Supreme Court of Appeals of Virginia in August, 1896.

"Your oratrix, therefore, avers and charges that no credit has been allowed her on account of the alleged payment made by A. M. Trimmer on the 23d day of July, 1892.

"(6) As to what was the amount of the credit of July 23, 1892, your oratrix has no personal knowledge. The payment was not made by her, nor was it made in the presence of her agent, nor did she take any interest in the amount thereof, as it was distinctly represented to her agent at the time, that, so far as she and her husband were concerned, the debt was discharged as to them and they need feel no further interest therein.

"Nor does the said endorsement state the amount of the said credit. It simply declares that "a sufficient amount of the second note secured by this deed of trust having been satisfied, the lien as to lot No. 9, section 20, Lewis addition, as set forth in this deed of trust, is hereby released."

"(7) Your oratrix files herewith a copy of the judgment of the Fidelity Loan & Trust Company against her and *als.*, in which the credit of $600.00 received in the suit of the Fidelity Loan & Trust Company *vs.* Dennis, Truitt & Co., is allowed as of the 16th day of March, 1894.

"Your oratrix is informed that the reason the said credit is of that date, instead of the date on which the decree of the Court of Appeals aforesaid was rendered, was because the said sum of money was deposited in bank to the credit of the receiver of the court in pursuance of a decree entered in February, 1894.

"The said copy of the judgment is marked 'Exhibit No. 2.'

"(8) Your oratrix avers that the reason why the failure on the part of the Fidelity Loan & Trust Company, to credit the judgment by the payment made on or before the 23d day of July, 1892, was not referred to or relied on in her original bill, was that the same was an inadvertence, none of the payments having been made by her or come within her personal knowledge. Whether any amount was actually paid by the said A. M. Trimmer to the Fidelity Loan & Trust Company on the 23d day of July, 1892, or not, is a question as to which your oratrix has no personal knowledge. This she distinctly avers, that it was represented to her at the time that a sufficient amount of the second note had been paid to justify the Fidelity Loan & Trust Company in releasing all of its securities except lot No. 8, and in releasing the sureties or endorsers of the note aforesaid, and that such was the intended effect of the endorsement aforesaid. She distinctly avers that it was on the faith

·of the representation made by the Fidelity Loan & Trust Company at the time, that she and her husband would be dis-·charged from all further liability on account of said trans-action; that she consented to the endorsement on the margin of the deed book aforesaid, and that she never would have consented thereto and deprived herself of the right to require the payment of the said note from the proceeds of lot No. 9, unless she had had the assurance that she had no further interest therein, and there would be no further liability on her therefor. If the endorsement therein contained be true, and a sufficient amount of the second note had been paid on or before the 23d day of July, 1892, to justify the release aforesaid, then that payment, together with the $600.00 derived from the proceeds of the sale of lot No. 8, paid off and satisfied the debt aforesaid, and left no further debt for which any one would be liable; and the failure on the part of the Fidelity Loan & Trust Company to allow a credit on the said note at the time of the rendition of the judgment for the payment so made by said A. M. Trimmer, was a gross fraud upon your oratrix as a surety of the said A. M. Trimmer.

"(9) If no payment were made by the said A. M. Trimmer to the said Fidelity Loan & Trust Company on the 23d day of July, 1892, of an amount sufficient to justify the release of lot No. 9, as stated in the endorsement aforesaid, then the Fidelity Loan & Trust Company made a false representation to your oratrix, on the faith of which she consented to the release aforesaid, and perpetrated a fraud against her which will forever estop it from asserting any liability upon her on account of said debt. In either event, the Fidelity Loan & Trust Company, in making the representation, and allowing no credit on the judgment for the alleged payment, has perpetrated a fraud upon your oratrix against which a court of equity will relieve her.

"(10) Again your oratrix avers that the legal effect of the endorsement aforesaid, made by the Fidelity Loan & Trust Company was that the amount of the debt had been so reduced by the payment made by A. M. Trimmer on or before the 23d day of July, 1892, that lot No. 8 remaining unreleased was sufficient to satisfy and pay off the same, and discharge the securities and parties secondarily responsible for all liability thereunder.

"(11) Your oratrix therefore avers and charges that the effect of the transaction of July 23d, 1892, is to forever discharge her from all further liability on account of the debt aforesaid.

"Inasmuch, therefore, as your oratrix is remediless save in a court of equity, she prays for leave to file this her amended bill in said cause, and that . . . . . . . . . . . ., administrator of L. E. Evans, Francis B. Kemp, E. C. Hoge, and the Fidelity Loan & Trust Company, a corporation, be made parties defendants to this bill, and required to answer the same; but answer under oath is waived.

"May the said Fidelity Loan & Trust Company be required to specifically disclose to the court the amount of the said credit of July 23, 1892. May the injunction heretofore awarded to your oratrix be perpetuated, and may the said judgment of the Fidelity Loan & Trust Company against her and others be set aside and declared null and void as to her.

"May all such other and further and general relief be granted to your oratrix as the equity of her case requires. May process issue, etc., and your oratrix will ever pray, etc.

"LIZZIE G. HOGE,

By L. H. Cocke, Hoge & Hoge,

Scott & Staples, Attorneys."

*Lucien H. Cocke, Samuel H. Hoge* and *Scott & Staples,* for the appellant.

*H. T. Hall,* for the appellee.

HARRISON, J., delivered the opinion of the court.

The bills, original and amended, in this case seek to enjoin a final judgment at law in favor of the appellee company against the appellant, Lizzie G. Hoge. The material allegation, and that relied on as the ground for the injunction, is that the debt, which was reduced to judgment, was secured by deed of trust upon certain real estate ample for its payment, and that appellant was induced by the appellee to release the lien for its security by representations that the debt had been arranged, and that appellant would be no longer personally responsible therefor—in brief, that appellant was induced to release the security by fraud and deceit, which operated as an equitable estoppel *in pais;* that appellant was advised and believed that whatever might be her rights in a court of law, her remedy in a court of equity was clear, and would be more adequate, and hence that she had allowed the judgment to go by default, and set up her defense by bill in equity.

These bills were demurred to, which is practically a demurrer to the jurisdiction of a court of equity to interfere by injunction with the judgment at law. The demurrer was sustained, and the bills dismissed, and from that decree the case is before this court.

That the defense of equitable estoppel is as available at common law as in equity is well settled. *Dickenson* v. *Colgrove,* 100 U. S. 578; 25 L. Ed. 618; *Kirk* v. *Hamilton,* 102 U. S. 68; 26 L. Ed. 79; *Barnard* v. *German-American Seminary,* 49 Mich. 444, 13 N. W. 811; *Dickerson* v. *Board of Commissioners,* 6 Ind. 128, 63 Am. Dec. 373.

In *Kirk* v. *Hamilton, supra,* Mr. Justice Harlan, in speaking of equitable estoppels, says: "The remedy in such cases lay originally in an application to chancery, and no redress could be had in a merely legal tribunal, except under rare and exceptional circumstances. But the common law has been enlarged and enriched under the principles and maxims of equity which are constantly applied at this day in this country, and in England. The doctrine of equitable estoppel is, as its name indicates, derived chiefly, if not wholly, from courts of equity. . . . There would seem to be no reason why its application should be restricted in courts of law. . . . Whatever may be the wisdom of the change through which the law has encroached on the jurisdiction of chancery, it has now gone too far to be confined within any limits short of the whole field of jurisprudence. This view is maintained by the main current of decisions."

In the case of *Barnard* v. *German-American Seminary, supra,* injunctions were sought to restrain the prosecution of certain actions at law. The ground upon which the injunctions were asked was that the defense of equitable estoppel might be made, which, it was contended, was not available at law. Judge Cooley, delivering the opinion of the court, says: "Estoppels *in pais* are called equitable estoppels, not because their recognition is peculiar to equitable tribunals, but because they arise upon facts which render their application, in the protection of rights, equitable and just. Courts of equity recognize them in cases of equitable cognizance, but the courts of common law just as readily and freely. *Sebright* v. *Moore,* 33 Mich. 92; *Maxwell* v. *Bay City Bridge Co.,* 41 Mich. 453, 2 N. W. 639; *Kid* v. *Mitchel,* 1 Nott & McC. 334, 9 Am. Dec. 702; *Dezell* v. *Odell,* 3 Hill, 215, 38 Am. Dec. 628; *Horn* v. *Cole,* 75 Ill. 516; and it is never necessary to go into equity for the mere purpose of obtaining the benefit of an equitable

estoppel when the case is not otherwise of equitable jurisdiction. There was consequently no necessity whatever for these suits. They performed no office except to take the questions from the court of law, which was already fully possessed of them and was entirely competent to do complete justice."

This case is directly in point, except that the case at bar is stronger for the application of the doctrine announced, in that the injunction is ·here sought against a final judgment at law, whereas in the case cited the actions at law sought to be restrained were pending and undetermined.

In the light of these authorities we conclude that the defense of equitable estoppel was as available to the appellant in the action at law as in a court of equity, and the only remaining question is whether or not it was her duty to make the defense in the forum first acquiring jurisdiction of the subject.

The general doctrine undoubtedly is that when courts of law and courts of equity have concurrent jurisdiction over the same subject matter, and each can give as full and adequate relief as the other, the court which has first taken jurisdiction will hold it until the purpose of the litigation has been accomplished. Courts of equity will not for slight cause interfere with or set aside judgments at law. To entitle a party to such relief he must be free from all fault or negligence on his part. The rule of the best considered and most recent cases upon this subject is that the party must have failed in obtaining redress in the suit at law by the fraud of the opposite party, or inevitable accident or mistake, without any default of the party or his counsel. See note to *Oliver* v. *Pray,* 19 Am. Dec. 603, and the numerous authorities there cited.

The consideration alleged that appellant was advised and believed that she could stand by and let the judgment go by default, and then open again the litigation in a court of equity, does not avail. Parties are presumed to know. They have had

their day in court. That a party has mistaken his rights and so failed to make his defense at law does not entitle him to relief in chancery. *Dickerson* v. *Board of Commissioners, supra; Meem* v. *Rucker*, 10 Gratt. 506.

. In the case of *Haden* v. *Garden*, 7 Leigh, 157, it is held that though courts of equity and courts of law have a concurrent jurisdiction in cases of fraud, yet if a suit be first brought in a court of law, in which the question of fraud may be tried and determined, the party injured by the fraud must make his defense there, and if he neglect to do so the court of equity has no jurisdiction to relieve him. In that case Judge Carr says: "No excuse has been stated for the failure to make the defense at law. If it be said that the courts of law and equity have concurrent jurisdiction in such matters of fraud, that is true; but it is equally true that in all such cases the court which first gets possession of the case will make an end of it; and any defense which a party, according to the rules of that tribunal, can make must be made there. This is a settled rule."

In the same case Judge Tucker says: "As little tenacious as I may seem to be on the subject of jurisdiction, yet I am decidedly of opinion that when a party has a full, perfect and unembarrassed defense at law, of which he fails to avail himself, without even the pretense of an apology, he cannot be relieved in equity. . . . Nor does the consideration that equity has concurrent jurisdiction make any difference. The jurisdiction of equity to relieve against fraud is no excuse for the omission to make the defense when the party is already before a court having full cognizance of it, in a case depending before that court. Garden was sued at law, and might there have had redress. Shall he, without even a pretext, multiply litigation by instituting this second suit in equity? Shall he be permitted to shrink from the jury trial which must have decided the case at law, and bring his adversary into equity,

where he may escape, and actually has escaped, that ordeal? I think not, and am, therefore, of opinion that he was not entitled to any relief."

This case is conclusive of the question under consideration, and the rule there announced is sustained by the discussion of the same subject in many other Virginia cases, among which may be cited *Warwick* v. *Norvell,* 1 Rob. 326; *Perkins* v. *Clements,* 1 P. & H. 141; *Allen, Walton & Co.* v. *Hamilton,* 9 Gratt. 255; *Hudson* v. *Kline,* 9 Gratt. 379; *Meem* v. *Rucker, supra; Haseltine* v. *Brickey,* 16 Gratt. 116; *Green & Suttle* v. *Massie,* 21 Gratt. 356; *Holland* v. *Trotter,* 22 Gratt. 136; *Goolsby* v. *St. John,* 25 Gratt. 152; *Wallace* v. *Richmond, Assignee,* 26 Gratt. 67; *Penn* v. *Engles,* 82 Va. 65; *Barnett* v. *Barnett,* 83 Va. 504, 2 S. E. 733; *Virginia M. Co.* v. *Wilkinson,* 92 Va. 98, 22 S. E. 839; *Hancock* v. *Whitehall Tobacco Co.,* 100 Va. 443, 41 S. E. 860. In the light of these authorities and many others that might be cited, it may be stated to be an established rule that though, as in the case at bar, courts of equity and courts of law have a concurrent jurisdiction, yet, if a suit be first brought in a court of law, in which the defendant can make his defense as fully and adequately as he could in a court of equity, he must make his defense there, and if he neglect to do so a court of equity has no jurisdiction to relieve him, except in those cases where the jurisdiction of the law court is conferred by statute which provides otherwise, as in cases of equitable set off under section 3299 of the Code; or in cases of usury, as in *White* v. *Washington,* 5 Gratt. 645; *Woodson* v. *Barnett,* 2 H. & M. 80, 3 Am. Dec. 612, and *Skipwith* v. *Skipwith,* 3 Rand. 215. In the nature of things, this should be the rule. Not only should there be an end of litigation, but, were the rule otherwise, it would make the court of equity an appellate court, reviewing the final judgments of a court of equal dignity and concurrent jurisdiction; or put it in the

power of that court to usurp the whole field of litigation and destroy entirely the concurrent jurisdiction of the law courts.

The learned counsel for the appellant has invoked with great earnestness the doctrine that equity once having jurisdiction of a subject matter, because there was no remedy at law, or because the remedy at law was inadequate, does not lose such jurisdiction merely from the fact that courts of law afterwards give the same or similar relief, and that this original jurisdiction to grant relief by courts of equity is neither impaired by the assumption of the same powers by courts of law, nor by the extension to those courts of such powers by the Legislature, unless the statute conferring such jurisdiction uses restrictive or prohibitory words.

The doctrine contended for is as well established as that we have been discussing. *Pom. Eq. Juris.*, (1st Ed.), Vol. 1, sec. 182; *Barton's Ch. Prac.*, Vol. 1, sec. 16, p. 60; *Steinman* v. *Vicars*, 99 Va. 595, 39 S. E. 227; *Kelly* v. *Lehigh M. & M. Co.*, 98 Va. 405, 36 S. E. 511, 81 Am. St. 763; *Hull* v. *Watts*, 95 Va. 10, 27 S. E. 829; *Filler* v. *Tyler*, 91 Va. 458, 22 S. E. 235; but it has no application to a case where the jurisdiction of the court of law and the court of equity is concurrent, and where the litigant has been first impleaded in a court of law, and the machinery of that court is as adequate to afford the defendant a full and unembarrassed defense as a court of equity would be. In such a case, as already seen, he must make his defense in the court of law, and his failure to do so does not entitle him to relief in a court of equity.

The doctrine contended for by appellant, and under which she insists that equity has jurisdiction to interfere with the judgment at law, is applied in those cases where the court of equity has first obtained jurisdiction, and the defendant seeks to oust its control of the case upon the ground that the remedy of the plaintiff is complete and adequate at law. In such a

case the jurisdiction of the court of equity cannot be disturbed, if the subject matter of the litigation formed a part of its original jurisdiction. The cases cited in support of each doctrine illustrate the circumstances under which each is invoked and applied, and show that there is no conflict between the two doctrines.

There was no error in sustaining the demurrer and dismissing the bills, and the decree appealed from must be affirmed.

*Affirmed.*