JAMES PAUL HAUDENSCHILT *et al.*

*v.*

W. PEARL HAUDENSCHILT *et al.*

(No. 9722)

Submitted April 16, 1946. Decided June 11, 1946.

*E. H. Yost* and *G. W. Coffield*, for appellant.

*A. E. Larrick* and *Walter F. Ball*, for appellees.

Fox, JUDGE:

This is a suit in equity, instituted in the Circuit Court of Wetzel County, in which the plaintiff seeks to surcharge and falsify a settlement of the accounts of James S. Haudenschilt, guardian for the plaintiff. In substance and effect, the settlement under attack was made in the lifetime of the guardian, who is now deceased, although, technically, only a report of a commissioner of accounts, made after the death of the guardian is involved. The devisees and legatees under the will of James S. Haudenschilt, other than plaintiff, are made defendants, as are the executor under said will and the surety on his bond as such. Lola M. Boothby is also made a party defendant by reason of an allowance to her of a claim against the estate of James S. Haudenschilt, which is sought to be reconsidered and disallowed. The circuit court, for reasons stated by it in writing, made a part of the record, dismissed the plaintiff's bill, and from the decree of dismissal, entered on July 25, 1944, we granted this appeal. The suit, being one in which the substantial issues are between the plaintiff and the executor of James S. Haudenschilt, these parties will be referred to as "plaintiff"

and "defendant", the positions they occupied in the court below, and James S. Haudenschilt will be referred to as "guardian".

The nature of the issues of law and fact presented on this record requires a summary of developments concerning three trusts and over a long period of time. These are the estate of James F. Haudenschilt, father of plaintiff; the account of the administratrix of such estate, who was the mother of plaintiff; and the estate of James S. Haudenschilt, plaintiff's grandfather, who, until plaintiff reached his majority on March 1, 1934, acted as his "guardian".

On October 31, 1918, plaintiff's father, James F. Haudenschilt, died intestate, seised and possessed of certain real and personal property. The value of the personal property appears to have aggregated approximately $18,382.24; and the real estate was sold for $2,500.00. The appraisement of this estate does not appear in the record and is not available. The figures mentioned above are obtained from the settlement of the accounts of the administratrix, and from court records of the sale of the real estate made by the guardian. It should be stated here that shortly after the death of James F. Haudenschilt, his wife, Auttie Haudenschilt, now deceased, qualified as administratrix of his personal estate; and on May 24, 1919, James S. Haudenschilt was appointed and qualified as guardian for plaintiff.

The record discloses, without serious question, the amount of money which went into the hands of the guardian. This is shown first by reference to the settlement of the accounts of Auttie Haudenschilt, administratrix, admitted to record on January 21, 1922. In that settlement, made before E. O. Keifer, commissioner of accounts, the administratrix charges herself with the sum of $18,382.24, made up of goods and fixtures sold for $6,362.00; bank account, cash and book account, $5,381.24; household goods and stock $1,071.00; war savings stamps, at face value, $1,068.00; and liberty

bonds, at face value, $4,500.00. The administratrix established the payment of certain items of account, and, taking into consideration her compensation, she paid out of said estate the sum of $1,245.66, leaving to be accounted for the sum of $17,136.58. She retained $5,712.20, as her share of her husband's estate. On June 25, 1920, the guardian executed to Auttie Haudenschilt a receipt in the words and figures following: "Received from Auttie Haudenschilt, administratrix of the estate of J. F. Haudenschilt, deceased, the sum of $11,512.29 in cash, liberty bonds, notes, etc. in full settlement of the amount from her to Paul Haudenschilt, as heir and only child of J. F. Haudenschilt, deceased."

On June 14, 1919, the guardian filed his petition against his ward, in the Circuit Court of Wetzel County, praying for authority to sell and convey four certain parcels of real estate, of which the father of his ward died seised, and such proceedings were had in the case that a sale of the property was made for the sum of $2,500.00, which sale was confirmed. Auttie Haudenschilt, as the widow of James F. Haudenschilt, was decreed the sum of $486.70, as her dower interest in said real estate, leaving a remainder of the purchase price, $2,013.30, which went into the hands of the guardian. It clearly appears, therefore, according to the receipt which the guardian gave to Auttie Haudenschilt, administratrix, and the record of the circuit court, showing the sale of the real estate aforesaid, that there passed into the hands of the guardian the sum of $13,525.59.

The first settlement by the guardian is dated August 1, 1932, and was made before A. C. Chapman, commissioner of accounts. In that settlement the guardian is charged with the sum of $10,880.29, which, it will be observed, was less than the $11,512.29 for which the guardian receipted to the administratrix. In the report of the commissioner it is stated that there is still due the guardian from Auttie Haudenschilt, administratrix, the sum of $544.09, which, it is said, the guardian had not then been able to collect. The $10,880.29, with which

the guardian was charged was made up of certificates of deposits and checks, $5,312.29; war savings stamps, $1,068.00; liberty bonds at face value, $4,500.00. Added to that were various items of interest on liberty bonds and the Pyle and Mason notes; and credit was taken for various sums paid by the guardian for the maintenance of his ward and other expenses, and a final balance was struck, as of July 1, 1932, showing the guardian as then indebted to his ward in the sum of $11,061.95. In other words, over the long period of time since he became guardian in 1919 to the date of his settlement in 1932, the estate had increased in value.

The next settlement by the guardian, which is claimed to be final settlement, being made one day after plaintiff attained his majority, charges the guardian with the sum of $11,061.95, the total found to be due on the first settlement, to which was added certain interest received on liberty bonds and certain notes, making the total chargeable to the guardian $11,476.95. Against this amount he was allowed credit for expenditures, principally for the ward's education, and including an allowance of one hundred dollars to the guardian, and costs of the commissioner's report, all aggregating $2,252.04, leaving a balance due from the guardian to plaintiff of $9,224.91. The report of the commissioner contains a statement that the estate of Auttie Haudenschilt was indebted to the guardian in the sum of $619.35, and that plaintiff, being the only heir and distributee of said estate, desired that said debt be discharged by allowing the same as a credit to James S. Haudenschilt, guardian, in his settlement, which was done, and that was included in the guardian's credit aggregating $2,252.04, aforesaid. Presumably, this is the $544.00 which the guardian mentioned as not having been paid to him by the administratrix. The report also contains this language: . "Your commissioner further finds and reports that said guardian, J. S. Haudenschilt, has this 1st day of March, 1934, turned over Liberty Bonds, cash and securities, to the said James Paul Haudenschilt, amounting to the sum of

$9,224.91; that the said J. S. Haudenschilt Guardian, having fully accounted and paid over all funds in his hands as such Guardian, should be discharged from all liability as such, together with the surety on his bond."

Assuming the correctness of the above report of settlement, it would appear to be a final settlement of the account between plaintiff and his guardian; but plaintiff denies that he understood it to be a final settlement; avers that it was not such settlement; and that from time to time thereafter he sought a final settlement with his guardian, but was unable to obtain it.

Nothing further developed in the matter prior to the death of James S. Haudenschilt on April 25, 1937, after which the defendant, W. Pearl Haudenschilt, qualified as executor under his last will and testament. The settlement of the estate of the said James S. Haudenschilt was referred to A. C. Chapman, the same person who had made the guardian's settlement aforesaid. Chapman later retired from the case, and the matter was referred to L. S. Hall, a commissioner of accounts, before whom plaintiff filed a claim against the estate of his guardian, in which he seeks to charge such estate with the sum of $19,706.36, made up of the sum of $11,512.29 covered by the guardian's receipt to Auttie Haudenschilt, administratrix, and divers sums alleged to have been received by the guardian, as interest on bonds, certificates of deposit, notes, etc. In this claim no mention is made of the item of $2,013.30, derived from the sale of the real estate aforesaid, although the guardian is charged with various sums of interest accruing on the note given for this real estate. Apparently, at that time, it was assumed that the $2,013.30 was included in the item of $11,512.29, for which the guardian gave his receipt to the administratrix. In the claim filed before commissioner Hall, it was admitted that the guardian was entitled to credit for the sum of $13,721.16, which, deducted from the amount chargeable, left a balance of $5,995.20, as of March 1, 1934, the date of the last settlement. Among the credits

included in the admission aforesaid, is an allowance to the guardian of one hundred dollars; the item of $619.35, which was supposed to represent indebtedness of Auttie Haudenschilt's estate to the guardian; and the sum of $6,406.91, representing government bonds and cash paid by the guardian to plaintiff on March 1, 1934.

As a defense to this claim on the part of the plaintiff, the defendant executor of the guardian's estate, filed what is termed a plea of *res adjudicata,* in which plea he refers to the whole record then before the commissioner. The substance of this plea is that the settlement made by the guardian before A. C. Chapman, commissioner, on March 1, 1934, confirmed by the County Court of Wetzel County on April 4, 1934, was conclusive and binding. We understand this plea to be based upon Code, 44-4-20, which will be hereinafter referred to. Another plea was filed concerning a note of L. C. Parsons, given for money loaned from the guardian's funds, for which, it is claimed, the guardian failed to account. There was a demurrer to the plea of *res adjudicata,* and the issue of the finality, validity and force of the settlement of March 1, 1934, aforesaid, was plainly presented. On this issue the commissioner of accounts, on January 11, 1939, made the following holding: "Therefore, your Commissioner is of the opinion and doth find and report that the said final settlement of the fiduciary accounts of James S. Haudenschilt, Guardian of James Paul Haudenschilt, infant, shall be taken to be correct, and binding and conclusive upon the beneficiary of said estate, being the said James Paul Haudenschilt, as provided by Chapter 44, Article 4, Section 20, of the Code of West Virginia. And your Commissioner further finds and reports that the claim of James Paul Haudenschilt against the Estate of James S. Haudenschilt, deceased, should not be allowed, and your Commissioner therefore does not allow said claim as a valid claim against the Estate of James S. Haudenschilt, deceased." In this report the commissioner found indebtedness against the James S. Haudenschilt estate, aggregating $3,954.50, included in which

was a claim of $2500.00 in favor of the defendant, Lola M. Boothby. This report was approved and confirmed by the County Court of Wetzel County.

There was no appeal to the circuit court from the finding of the commissioner of accounts, approved by the county court. The plaintiff, being dissatisfied with that report, promptly instituted this suit, and filed his bill at March rules, 1939. The bill is lengthy and contains allegations concerning all of the various items hereinbefore mentioned, and others not mentioned. There are specific charges as to various items which appear to have been considered in the alleged settlements made by the guardian. It is charged that there went into the hands of the guardian on June 20, 1920, the sum of $11,512.29 paid to him by Auttie Haudenschilt, adminisrtatrix. There is a further allegation that there went into his hands the additional sum of $2,013.30, derived from the sale of real estate of which plaintiff's father died seised and possessed, and which the guardian sold under decree of the Circuit Court of Wetzel County. It is charged that the guardian accounted for only $10,880.29, of the sum which went into his hands as such guardian, as paid to him by the administratrix, and that no accounting was made for the $2,013.30 aforesaid. It is alleged that the guardian failed to account for certain money belonging to his ward, loaned to one Parsons. It is charged that money belonging to plaintiff's estate was invested by the guardian in the stock of Jackson Building & Loan Association, an investment alleged to have been unauthorized and improper, and which proved to be, practically, a total loss; and the guardian's estate is alleged to be under obligation to account therefor. Many other matters and things appear in the bill, to which we do not consider it necessary to refer.

The bill contains the following allegation: "Plaintiff alleges that his said Guardian and the Commissioner of Accounts, taking advantage of his age, lack of knowledge of his business affairs, and his relationship with his said

Guardian, fraudulently connived and conspired together for the purpose of defeating and defrauding Plaintiff out of his said estate or money and other properties, which came into the hands of his Guardian as such; and Plaintiff had no reason to believe that said pretended report, under date March 1, 1934, was to be a final report."; and the further allegation: "Plaintiff alleges that the pretended final report, under date March 1, 1934, is not a final report as indicated and stated therein; that said report fails to list all of the assets which came into the hands of James S. Haudenschilt belonging to Plaintiff, before said Commissioner in either of said reports filed herewith, as 'Exhibits B and D'; that the said Commissioner failed and neglected to return with said pretended final report, the vouchers and other evidence as Plaintiff is advised the statute required; that said pretended report on its face thereof, shows fraud and misrepresentation and utterly fails to include therein a complete itemization of all of the funds which actually came into the hands of Plaintiff's Guardian; * * *". These allegations are the only direct allegations of fraud contained in the bill. There are allegations with respect to the failure to account, and of unwise and unauthorized expenditures and investments of the ward's estate, which, if true, would amount to legal or constructive fraud. Whether there was any purpose to commit actual fraud, we are of the opinion that these allegations sufficiently allege fraud. It is our understanding of equity practice that allegations of facts which the law treats as creating fraud, either actual or constructive, are sufficient to constitute a charge of either actual or constructive fraud, depending on the nature of the facts alleged.,

The executor of the estate of James S. Haudenschilt appeared and filed his demurrer to plaintiff's bill. The principal ground of demurrer was that Section 20 of Article 4, Chapter 44 of the Code, abolished the previously existing remedy in equity to surcharge and falsify the settlement of the accounts here under attack. The bill was also attacked on the ground that it was multifarious,

and that relief was barred by laches. This demurrer was overruled for reasons given by the Court in a written opinion, in which the court based its decision upon the jurisdiction of courts of equity to entertain suits to correct settlements of accounts of this nature, particularly where fraud in connection therewith was charged. The executor then filed his answer, which goes into the matter at great length, and in which he attempts to explain and defend against the various charges contained in plaintiff's bill. There was also an answer to the bill filed on the part of Lola M. Boothby, the allowance of her note as a claim against James S. Haudenschilt having been attacked therein.

By orders dated July 27, 1940, and September 27, 1940, the case was referred to Henry P. Snyder, commissioner in chancery, to whom were submitted the questions raised by plaintiff's bill and the answers thereto. A large volume of testimony was taken before him, various items hereinbefore discussed were considered, statements were produced and admitted as evidence, and his report was made and filed.

It is unfortunate that we do not have the record of the appraisement of the estate of James F. Haudenschilt, father of plaintiff. The inability to have the advantage of this paper may have given rise to this litigation. We think, however, that sufficient evidence was produced before the commissioner in chancery from which we can fairly well determine the amount of the estate of James F. Haudenschilt, which finally went into the hands of his administratrix, and from her to the guardian of his son. Among these assets was a stock of merchandise and fixtures. These were sold to Pyle and Mason for $6,362.00, for a portion of which they gave notes of $2,000.00 and $500.00. We think it quite clear that, at the date of the settlement between Auttie Haudenschilt, administratrix, and James S. Haudenschilt, guardian, there was intended to be turned over to the guardian by the administratrix, liberty bonds of the face value of $4,500.00; war savings

stamps of the face value of $1,200.00; Pyle and Mason note of $2,000.00; Pyle and Mason note of $500.00; Pyle and Mason note on realty $486.70; certificate of deposit, $2,000.00; check of August 13, 1923, $325.59; check of October 7, 1919, $300.00; check of June 20, 1920, $200.00, making a total of $11,512.29. It may be that, in fact, only $10,880.29 was so paid, but at least that sum was transferred from the administratrix to the guardian. It will be observed that in this transfer and accounting no mention is made of the $2,013.30, which the guardian received from the sale of the real estate, but the $486.70 derived from that sale, belonging to the widow of James F. Haudenschilt, is taken into account. Then, James S. Haudenschilt, guardian, made a memorandum of the amount of money which he received from the administratrix, and one item in that memorandum is $2,986.70. It is contended by plaintiff that this item represents the two Pyle and Mason notes, one for $2,000.00 and the other for $500.00, and the amount due Auttie Haudenschilt from the sale of the real estate, $486.70, which makes up the total of $2,986.70. This on the theory that the consideration for the real estate sold by the guardian was the $2,500.00 note, which the guardian retained and collected, some of which was collected as late as 1928, and that having this note in his possession he accounted to Auttie Haudenschilt for the money due her from the sale of the estate, and that at that time she had the two Pyle and Mason notes, aforesaid, and these sums aggregate $2,986.70. At another point in the record is a statement, purporting to be in the handwriting of James S. Haudenschilt, and purporting to be a copy of the invoice of James Paul Haudenschilt's property, as turned over to the guardian by Auttie Haudenschilt, administratrix of James F. Haudenschilt, which reads:

"Sept. 1920

| | |
|---|---:|
| Reg Bonds | 4500.00 |
| Oct. 16 twelve 'bok' stamps sold | 1068.00 |
| Pyles & Mason Note | 2000.00 |
| Pyles & Mason Note | 500.00 |
| Pyles & Mason on *Reality* | 486.70 |
| Certificate on First N. B. | 2000.00 |
| Check on First N. B. | 325.59 |
| | 10880.29 |
| Note on Pyles & Mason on *Reality* | 2013.30" |

Unquestionably all of these sums went into the hands of the guardian, and he should have been required to account therefor.

Another question before the commissioner related to the investment of $2,000.00 in stock of the Jackson Building & Loan Association. This purchase was made in 1928, and that organization went into liquidation and its business was closed by State authorities late in 1929. There is nothing in the record to indicate that there was bad faith on the part of the guardian in making this investment, but, in the light of later developments, it was not a wise one.

Another matter laid before the commissioner was the question of the Parsons notes, which represented money loaned by the guardian from his ward's funds to a man named Parsons. Undoubtedly, the guardian should have been required to account for this money, but it is contended that he did so in the settlement made March 1, 1934, and the plaintiff, after reaching his majority, and after March 1, 1934, executed a writing by which he vested title to these notes in his guardian; he claims, however, that this was done to place the guardian in a position to facilitate a loan by which the notes could be collected.

The commissioner properly declined to pass upon the question of the so-called plea of *res adjudicata*. He found that there was no evidence of actual fraud; but found that the guardian had made some minor illegal dis-

bursements, and further found that the guardian had not fully accounted to plaintiff for the funds in his hands as guardian at the date of his death, and that there had not been such showing of laches as to bar plaintiff's claim. The commissioner specifiically found that the guardian had not accounted to plaintiff for his portion of the $2,500.00 Pyle and Mason real estate note, the principal sum of which is $2,013.30. He found that in the guardian's first settlement on August 1, 1932, he was charged with $10,880.29, which did not include the $2,013.30 aforesaid, and that the amount should have been accounted for at that time. He also held that the guardian had not accounted in full for interest on the $2,013.30 aforesaid, but apparently lost sight of the fact, as appears from the first Chapman settlement, that interest on the Pyle and Mason note of $2,500.00 was paid for the years 1923, 1924, 1925, 1926, and 1927, and accounted for by the guardian. The commissioner found that the guardian was not liable for the amount of the Jackson Building & Loan Association investment, and that he should not be held liable for the L. C. Parsons note, the J. H. Riggenbach note, the L. H. Schrader note, the F. W. Schrader note, and the J. O. Newman note, he having accounted therefor. He found that the guardian had paid to plaintiff the sum of $9,224.91 on March 1, 1934; that the correct amount chargeable to the guardian, as paid to him from the personal estate involved was $10,880.29; and altogether the substance of the findings of the commissioner in chancery was that the guardian should be required to account for the $2,013.30, realized from the sale of the real estate made by the guardian, with proper interest. Other inconsequential items are held chargeable to the guardian, but it is not deemed necessary to mention them at this time.

Exceptions to the commissioner's report were filed by interested parties. In view of the action of the circuit court by its final decree, it is not necessary for us to enter into a detailed discussion of these exceptions.

On July 25, 1944, the circuit court entered a decree dismissing the plaintiff's bill. The trial judge filed a written memorandum, which is made a part of the record. He made no specific finding upon any of the exceptions to the report of the commissioner in chancery, but announced only his general conclusion, and then sustained or overruled the commissioner's findings to the extent necessary to make consistent his ruling on the main proposition involved in the case. His holding was that: "It is the opinion and finding of this court that the claim or claims of the plaintiff which are presented here were adjudicated before the County Court of Wetzel County, West Virginia, in a proceeding originated by the filing of these claims before Mr. Hall, Commissioner of Accounts; that such adjudication was final and binding upon the plaintiff and in the absence of any fraud in the procurement of that final settlement, equity, even though broad in its remedial scope, cannot extend its aid to one who has had his day in court, merely because he is dissatisfied with the results he obtained in the forum he elected to hear his complaint". He declined to pass upon the question of whether there was sufficient laches to bar the plaintiff's claim. In said decree the court makes findings of fact: that the guardian of plaintiff had not been guilty of any actual fraud in the handling of plaintiff's funds; nor guilty of any false or dishonest conduct; that plaintiff had failed to prove that the guardian and commissioner had fraudulently connived and conspired together for the purpose of defeating and defrauding plaintiff of his estate, which went into the hands of his guardian; and then decreed that the claim of the plaintiff, set forth in his bill, had been adjudicated before Hall, commissioner of accounts, and that such adjudication was final and binding upon plaintiff. The court then dismissed the bill and assessed costs against plaintiff.

From the foregoing it will appear that the decision of this cause depends upon the construction, force and effect to be given to Section 20, Article 4, Chapter 44 of the Code, which reads as follows:

"The report, to the extent to which it may be so confirmed by the county court, or confirmed on appeal by the circuit court, shall be taken to be correct, and shall be binding and conclusive upon creditors of a decedent's estate, and binding and conclusive upon every beneficiary of the estate or trust who has had notice that the report has been laid before the commissioner for settlement, or upon completion of the report was notified by the commissioner of its completion and that the same would remain in his office ten days subject to inspection and exception. Such notices to any creditor or beneficiary who is under disability shall be given by personal service on the guardian or committee of such person; and, where the report is that of a guardian, committee, or curator, the notice shall be served personally on the infant, ward or beneficiary and on the person or persons having his custody, or upon the guardian ad litem of such infant, ward or beneficiary that may be appointed for the purpose by the county court."

As bearing on the construction of this statute, reference is made to Code, 44-4-22, in which it is provided that when the county court shall have confirmed the accounts of a fiduciary, it may order payment of what shall appear due on such account, to such persons as would be entitled to recover the same. It then provides that if such order be not complied with, any person interested may bring a suit in equity in the circuit court of the county wherein the order was made to compel compliance therewith; and that in such suit such order shall be taken as *prima facie* correct, and there shall be a decree according to such order, except so far as it may appear upon proper pleadings and proof to be erroneous. It appears, therefore, that while under Section 20 quoted above a commissioner's finding will, in certain circumstances, be held to be binding and conclusive, it is, under said Section 22, only *prima facie* evidence of the correctness in a suit in equity, where a beneficiary seeks to enforce the provisions of such report.

There can be no question that some change in the law was intended to be made when Code, 44-4-20, was enacted. It is a new section of the Code, and was intended to take the place of Section 22, Chapter 87, Barnes' Code, 1923,

which, referring to the report of a commissioner of accounts provides: "The report, to the extent to which it may be so confirmed, shall be taken to be correct, except so far as the same may in a suit in proper time, be surcharged or falsified." The revisers' note makes clear the purpose of the change in the statute. Under the statute as it was before the enactment of 1931, the right to surchargge and falsify an account was recognized by statute. Clearly that statutory recognition was withdrawn, except in the particular instance covered by Code, 44-4-22. But, in our opinion, it was not intended to, and does not, take away from courts of equity the jurisdiction which they have always had, independent of any statute, to surcharge and falsify the settlement of accounts of fiduciaries, where equitable ground therefor exists.

We assume that it will not be questioned that courts of equity have jurisdiction, under their general powers, to inquire into the accounts of executors or administrators. "A court of equity, under its general powers, has the power to inquire into the account of an executor or administrator, where some ground for the exercise of equitable jurisdiction, such as fraud, misrepresentation, or mistake, is clearly established, provided the complaining party has exercised diligence, and is not guilty of laches." 21 Am. Jur. 685. *Seabright* v. *Seabright,* 28 W. Va. 412, is the leading case in this State on the question of the surcharge and falsification of *ex parte* settlements of the accounts of fiduciaries. It was there stated: "There was no statute in Virginia prior to the Code of 1849 declaring the effect and weight of such *ex parte* settlement of an executor, though from a very early day there were statutes in Virginia which declared that such *ex parte* settlements of a guardian, and also inventories and appraisements returned by executors should be regarded as *prima facie* correct but subject to be surcharged and falsified. For these acts see R. C. of 1819, ch. 104, sec. 45, vol. 1, p. 387 and ch. 108, sec. 7, p. 407." The opinion then goes on to say that the rules governing the surcharge and falsification of such a settlement of ac-

counts are the same as those where it is sought to avoid a stated account which is defined "as an account which has been examined by the parties and the balance admitted as the true balance without having been paid"; and further that "The mode of surcharging and falsifying *ex parte* settlements of executors is not prescribed by statute, and it is, as it always has been, the same as the mode of surcharging and falsifying *stated* accounts." The surcharge and falsification of the settlement of an account of a fiduciary has always been one of the important functions of a court of equity, and, so far as we know, has never been effected in any other way. The jurisdiction of a court of equity in such matters is, fundamentally, based upon its jurisdiction to enforce trusts, inasmuch as every fiduciary occupies a trust relation to his estate, or to the beneficiaries thereof, and, in case of a guardian, his ward. We find this jurisdiction referred to as within the general powers of courts of equity by reference to such authorities as 2 Story's Equity Jurisprudence, 105; 2 Lomax on Executors, 520; 2 Tucker's Commentaries, Ed. 1846, 407; Minor's Institutes, Vol. IV, Part II, page 1232; 4 Pomeroy's Equity Jurisprudence (5th ed.) 408, and covered by Sections 1152-1154 (b), page 456. For a discussion of settlements of estates in connection with the powers of probate courts, see 1 Pomeroy's Equity Jurisprudence (5th ed.), 776, Sections 347-351, inclusive. The jurisdiction of a court of equity to surcharge and falsify the settlement of a fiduciary clearly exists under its general powers, and a statute which merely deals with procedure, outside of a court of equity, in the settlement of such accounts should not be held to deprive a court of equity of its jurisdiction in the same matter, where equitable grounds for its intervention exist. Generally speaking, the jurisdiction of a court of equity is not affected by a change in a statute under which some other body, even one having judicial powers such as a county court in some instances, and under which it may be provided its findings are binding and conclusive. 1 Barton's Chancery Practice, 9.

"Courts of equity having once acquired jurisdiction never lose it because jurisdiction of the same matter is given to courts of law, unless the statute conferring such jurisdiction uses prohibitory or restrictive words." *Filler* v. *Tyler,* 91 Va. 458, 22 S. E. 235; *Beverly* v. *Rhodes,* 86 Va. 415, 10 S. E. 572; *Hoge* v. *Fidelity Loan & Trust Co.,* 103 Va. 1, 48 S. E. 494; *Shield* v. *Brown,* 166 Va. 596, 186 S. E. 33. There is nothing in Code, 44-4-20, which indicates any intent on the part of the Legislature to interfere, in any manner whatsoever, with the jurisdiction of courts of equity in the settlement of estates; and under prevalent standards of construction we do not think this Court should read into that section a purpose and intent which the Legislature itself did not choose to state. As stated above, the jurisdiction of courts of equity extends to all cases of fraud, accident, misconduct, misrepresentation, or other matters which equity, under its general power, will correct. We can scarcely conceive that the Legislature meant, by its action in adopting the changed statute, to close forever the door to the correction of any wrong which might develop from the settlement of the estate of a fiduciary. The right to surcharge and falsify accounts, especially where there has been wrongdoing on the part of a fiduciary, is so much a part of the equity system, under which estates are managed and accounted for, that we are of the opinion that only an express provision of the Legislature should be construed to limit the power of courts of equity in respect to such conduct. We are of the opinion, therefore, that Code, 44-4-20, should not be construed to deprive courts of equity of their jurisdiction, under their general powers to surcharge and falsify settlements in a suit in equity, where equitable grounds exist, independent of any statute. In the case at bar, the decisive question to be considered is whether there was fraud, either actual or constructive, on the part of the guardian. For that reason other possible grounds of equitable jurisdiction will not be considered.

While the plaintiff's bill asks that the settlement of the account of the executor of the last will and testament of

James S. Haudenschilt be surcharged and falsified, as to the matters affecting the same, alleged in the bill, it is clear that such prayer calls for a consideration of and the surcharge and falsification of the settlements made by the guardian before A. C. Chapman in 1932 and 1934. Commissioner of accounts, Hall, refused to reopen the settlement of March 1, 1934, on the ground that Code, 44-4-20, made that settlement binding and conclusive. He did not go into the merits of the claims of the plaintiff, then presented to him, which are the same as those set up in plaintiff's bill. Commissioner in chancery, Snyder, left open for the circuit court's decision the question of the finality and binding force of the settlements theretofore made by the guardian; and the circuit court, in its final decree in this cause held, in effect, that the settlement before Chapman, made on March 1, 1934, was under Code, 44-4-20, binding and conclusive on the plaintiff and denied him any relief. If commissioner of accounts, Hall, was correct in his holding, and if the circuit court was correct in its holding that the statute above mentioned was conclusive and binding against the claims of plaintiff; then, of course, the plaintiff is not entitled to relief. But, if for any reason, equity has jurisdiction on any ground whatever to inquire into, and surcharge and falsify the settlement of the accounts of the guardian, and relief under such theory is not barred by the laches of the plaintiff, then the decree of the circuit court must be reversed and the cause sent back for final decree on its merits.

No one questions the proposition that if there was fraud on the part of the guardian in the procurement of any settlement he made as such, equity has jurisdiction to set aside such settlement and, so far as we know, only a suit in equity to surcharge and falsify that settlement can be used to effect that purpose. As will hereinafter be indicated, this Court is loathe to consider any question not considered by the court below. For that reason we will refrain from expressing any opinion upon certain questions which were considered by the commissioner in chancery, and which the court did not, in fact, pass upon.

But there is one question which it seems to be necessary for us to decide, and that is whether the guardian accounted for the sum of $2,013.30 received by him from the sale of real estate, of which the father of plaintiff died seised. In the first place the record is clear that this sum of money went into the hands of the guardian. This being true, the burden is upon his personal representative to show that he accounted therefor. On the record before us, we are of the firm opinion that that sum of money was never accounted for in any settlement which the guardian made. The evidence on that point is too clear for controversy. We are further of the opinion that the failure to account for such sum was a fraud upon the rights of the ward, the plaintiff in this suit. We are aware of the rule that fraud is never presumed but must be proved, and, for that reason, we cannot say, and do not hold, that there was actual fraud on the part of the guardian. That, of course, would depend upon a showing of intent, either directly or by plain implication, and evidence thereof is lacking. But the fact that the guardian had this sum of money in his possession, and failed to account for it, whether intentionally or not, was, in law at the very least, constructive fraud; and such fraud was just as destructive to the interests of plaintiff as if there had been actual fraud. The circuit court, in its decree and memorandum opinion, in effect, indicates that fraud in the procurement of the settlements under attack would give a court of equity jurisdiction; but the court made its holding on the theory that there was no actual fraud shown. With that holding we agree, but we think that the court missed the point that equity will take jurisdiction of, and relieve against, constructive fraud to the same extent as in a case where there has been actual fraud.

The question of *res adjudicata* is raised in this suit. There was such a plea in the proceeding before Hall, commissioner of accounts. While it may not be necessary to pass upon the commissioner's ruling on that plea, we are inclined to the opinion that the plea was well taken,

and that Commissioner Hall was correct in his refusal to consider the claim of plaintiff filed before him on the ground that in doing so it would be necessary to set aside the settlement made before Chapman on March 1, 1934, which he could not do. We think Code, 44-4-20, makes binding and conclusive the report of a commissioner of accounts in a fiduciary matter, when that report is confirmed by the county court, so far as any remedy might exist in a court of law. If the report of commissioner Hall had been appealed to the circuit court, that appeal would still have been heard in a court of law, and we think the same ruling would have been called for. We need not go into a discussion of the application of the rules pertaining to *res adjudicata,* more than to say that when once a case has been fairly heard, it cannot, in another suit between the same parties, be reopened, and the first decision, unless appealed from and reversed, will stand as final and conclusive. But this is a suit in equity brought for the sole purpose of setting aside a settlement on equitable grounds. "In stating the doctrine of res judicata, the courts frequently refer to the fact that the judgment sought to be used as a basis for the application of the doctrine was rendered without fraud or collusion, since it is generally held that the principles of res judicata may not be invoked to sustain fraud, and that a judgment obtained by fraud or collusion may not be used as a basis for the application of the doctrine of res judicata." 30 Am. Jur. 941. "The doctrine of res judicata generally prevails as to all subsequent actions. However, a direct proceeding for the purpose of reversing or setting aside a judgment forms an exception to the doctrine that a matter which has been adjudicated by a court of competent jurisdiction must, in any subsequent litigation between the same parties or their privies, where the same question or questions arise, be deemed to have been finally and conclusively settled." *Id.* 948. We think the suit of plaintiff is a direct attack upon settlements of the guardianship account.

There may be some doubt as to whether the allegations

in plaintiff's bill with respect to fraud, and fraud in the procurement of the settlements under attack, are sufficient. They are not as direct and specific as they might be. There is the one specific charge of fraud and collusion between the guardian and the commissioner of accounts, which is not sustained by evidence. That passes out of the picture. But there is an allegation that the report of settlement of March 1, 1934, fails to list the assets which came into the hands of the guardian belonging to plaintiff, and that the report on its face shows fraud and misrepresentation, and generally fails to include a complete itemization of all property and money which came into the hands of plaintiff's guardian. When a court can see that a wrong has been committed, it will not, and should not, indulge in legal niceties, either on the merits or in respect to pleadings and procedure. We think the facts alleged in the bill, taken as a whole, should be construed as alleging a situation from which, if proved, in equity, establishes constructive fraud. Aside from the allegation as to collusion and conspiracy between the guardian and commissioner of accounts, there is no direct allegation that the settlement was procured by fraud; but it is simple reasoning to reach the conclusion that if a guardian lays before a commissioner of accounts a statement of his account, and fails to include therein items in his hands belonging to the ward, and thereby procures a finding by the commissioner of a lesser sum of money against him than would have been reported had he made a full and complete statement of the money in his hands belonging to his ward, that settlement has been procured by fraud, either actual or constructive.

The circuit court, in reaching its decision, strongly relied upon the case of *Ritchie* v. *Armentrout*, 124 W. Va. 399, 20 S. E. 2d 474. That was a case where an alleged creditor of a decedent filed his claim before a commissioner of accounts, before whom the settlement of decedent's estate was pending. His claim was disallowed, and confirmation by the county court followed. The

creditor then instituted an action at law by way of notice of motion, and was met by the contention that the action of the commissioner of accounts was binding and conclusive, and that contention was upheld. As we have above stated, we think Code, 44-4-20, precludes relief in a court of law because of any mistake or injustice which may have been made or suffered in the settlement of a fiduciary account, or by the allowance or disallowance of a claim against decedent's estate; but that does not reach the proposition presented, where, in a suit in equity, and on equitable grounds, particularly for fraud, such settlement is surcharged and falsified. The right to surcharge and falsify in such a case exists, even though, under Section 24, Article VIII of our Constitution, it is provided that county courts may exercise limited judicial powers. This section, referring to county courts, provides: "They shall have jurisdiction in all matters of probate, the appointment and qualification of personal representatives, guardians, committees, curators, and the settlement of their accounts, and all matters relating to apprentices." This vests in the county court judicial power, within the limits of their probate jurisdiction, and the settlement of the named fiduciary accounts. *Steber* v. *Combs,* 121 W. Va. 509, 5 S. E. 2d 420; *Estate of T. J. Long,* 122 W. Va. 473, 10 S. E. 2d 791; *Boone* v. *Boone,* 123 W. Va. 696, 17 S. E. 2d 790. That a court of law, such as a county court, may, under the Constitution, have certain judicial power, does not, necessarily, argue that a court of equity may not have the same power. There is such a thing as concurrent jurisdiction. Nor does it follow that if the Legislature chooses to make certain actions of a law court conclusive and binding, it thereby imposes the same rule on a court of equity, one of the functions of which is, and has always been, to correct judgments and decrees of courts of law, where equitable grounds therefor exist, and where there is no remedy at law. The conclusiveness of the judgment of a court of law has never been treated as an impediment to the setting aside of

that judgment by a court of equity where equitable grounds therefor are shown to exist.

We are of the opinion that, on the record before us, it has been clearly shown that there was constructive fraud in the procurement of the settlement which is made the basis of the ruling of commissioner of accounts, Hall, and that of the circuit court, which settlement a court of equity can now set aside, in a suit to surcharge and falsify the same. We think the failure of the guardian to account for the sum of $2,013.30, received by him from a sale of the real estate, and to which his ward was entitled was constructive fraud. We do not pass upon the other allegations of the bill, nor upon the finding of the commissioner in chancery respecting the Jackson Building & Loan Association stock, the Parsons notes, and other items of account mentioned, for the reason that we are of the opinion that all such matters should be first determined and decreed upon by the circuit court on their merits. We pass upon the one question because, in our opinion, a decision thereon is required to establish the fraud necessary to sustain the jurisdiction of a court of equity to pass upon the merits of the cause as a whole. Upon remand of the cause the circuit court should take such steps as to effect a fair and just settlement of the account in question; and, if deemed necessary and advisable, take further testimony upon any fact involved in such settlement, and then consider the whole case, including all of the settlements made, and the several reports of the commissioners of accounts, and the commissioner in chancery, to determine what, if any, sum may be due plaintiff from the estate of his guardian.

We therefore reverse the decree of the Circuit Court of Wetzel County, and remand the cause for further proceedings not inconsistent with the views herein expressed.

*Reversed and remanded.*

KENNA, PRESIDENT, dissenting:

James S. Haudenschilt appeared before A. C. Chapman, Commissioner of Accounts of Wetzel County, accompanied by his late ward, James Paul Haudenschilt, who was then of age, on the 1st day of March, 1934, and made what could only have been a final settlement of his account as guardian, at the same time turning over, according to the recitals in the commissioner's order, the equivalent of all assets in his hands as such to the plaintiff. The settlement was approved by the county court by its order entered on the 4th day of April, 1934. There was no objection to the confirmation of the report of the commissioner of accounts, nor appeal from the order of the county court confirming it, although the plaintiff was personally present in Commissioner Chapman's office and there, without objection, accepted the securities turned over to him. James S. Haudenschilt died on the 25th day of April, 1937. This proceeding was instituted February 10, 1939, and is an effort to surcharge and falsify an account which, according to the allegations of the bill of complaint, not contended by the plaintiff in error to have been sustained by proof, was the result of a fraudulent conspiracy between the commissioner and the guardian, not participated in by the county court that confirmed the commissioner's report, and therefore a total nullity. I believe that these conflicting theories, inconsistent on their face, have led to the confusion in the majority opinion, it being plain that an account that is totally void cannot be surcharged and falsified.

The majority opinion reopens and relitigates guardianship transactions that were laid before a commissioner of accounts in 1934, and permits those transactions to be used as instruments to set aside the order of the County Court of Wetzel County, acting under its constitutional jurisdiction to settle accounts, which passed upon their validity and held them good. It is perfectly clear that this is, in effect, setting aside a final decree by reason of transactions litigated in the proceedings on which the or-

der under attack is based. That is called in the books "intrinsic fraud", as distinguished from "extrinsic fraud" or fraud in obtaining the decree or judgment sought to be set aside.

In my judgment the majority opinion is in error because:

First: The record does not support the conclusions of fact stated in the main opinion to the effect that fraud has been clearly alleged and has been proved by a plain preponderance of the evidence so that a reversal is justified.

Second: If the fraud dealt with in the main opinion is admitted, that opinion is still in error because it considers fraud involved in the transactions that were settled before the commissioner of accounts and confirmed by order of the county court as sufficient to require the order of confirmation to be set aside, although it does not affect the entry of that order and, as expressly stated in the majority opinion, fraud charged in connection with the actual entry of the order of confirmation is not sustained by proof, and none is alleged that could not have been shown before the commissioner of accounts or before the county court.

Hoping that it may throw some light on the question of law that follows, I will first discuss part of the material testimony that I believe controverts what the Court's opinion treats as established fact.

It does not clearly appear, although the opinion indicates that it was so, that there came into the hands of J. S. Haudenschilt as guardian of James Paul Haudenschilt the amount of $13,525.59. To the contrary the record discloses quite clearly that the only property the ward owned was that acquired as an heir at law and distributee of his father, and that upon the final settlement of his father's estate before Keifer, commissioner of accounts, the aggregate value of the property administered by Auttie Haudenschilt, as administratrix was

$10,880.29. That was the exact amount with which J. S. Haudenschilt was charged before A. C. Chapman, commissioner of accounts, in a settlement made before him on July 1, 1932, as well as in the final settlement of March 1, 1934, and the amount for which the guardian accounted in full. The mistaken aggregate of $11,512.29 represented by the receipt given to Auttie Haudenschilt, administratrix, is accounted for, perhaps not clearly, but in some detail, by the proof taken. As stated, it does clearly appear that the only property owned by the ward was that received from his father's estate, and that the guardian accounted for its full value, in my opinion, including his ward's interest in the real estate sold after his father's death.

As to the Pyles and Mason note for $2500.00, the theory of the defendant is that that sum was included in the aggregate of $10,880.29, charged to and accounted for by the administratrix of James F. Haudenschilt, plaintiff's father. The note for the entire purchase price of $2500.00 was payable to James S. Haudenschilt, special commissioner, and contained a provision "that the sum of $486.70 parcel of said note is for the benefit of and belongs to Auttie Haudenschilt, widow of James F. Haudenschilt, deceased", the named sum being the value of the widow's vested dower. According to the defendant's contention the note was not delivered to James S. Haudenschilt, but went into the hands of Auttie Haudenschilt, due to the fact that the price the land brought, as well as the face of the note, included the value of her vested dower, amounting to $486.70. The defendant contends that through mistake that amount was added to the face of the note in the settlement of Auttie Haudenschilt's account as administratrix, making the total of the note with which she was charged $2986.70. This amount, defendant contends, was included in an entry appearing in the administratrix's settlement before E. O. Keifer, commissioner of accounts, as follows: "Bank account, cash and book account $5,381.24". The defendant's contention is substantiated by the fact that the sum of the

recognized value of the other property coming into the hands of James F. Haudenschilt's administratrix, fell short of the aggregate with which she was charged by Keifer, commissioner, in the exact amount of $2986.70. Concerning this contention, the plaintiff on cross-examination testified as follows (Record p. 397):

"Q. Now will you add the principal amount of that note of $2500.00 to the amount of $486.70, as shown in the note and tell us what amount you get?

"A. $2986.70.

"Q. And that is the same amount that your grandfather entered in his book after the notation promissory note, is it not?

"A. Yes, it looks as though she turned that note back to him.

"Q. That would indicate to you then that the Pyles and Mason notes were charged to your mother as a part of your father's estate rather than carried by your grandfather independently, does it not, is that right?

"A. That looks like it but the court proceedings doesn't show that.

"Q. Since you have seen your grandfather's cash book it indicates very strongly the Pyles and Mason notes were included in your mother's settlement?

"A. It may be that, it may be he includes something else there."

The reference to "something else there" is not explained by the witness nor elsewhere in the record. There are other less material respects in which I believe the statement of facts contained in the majority opinion should be amplified.

This is clearly one of those unfortunate occurrences in which a member of a family acted as a fiduciary under the misconception that his honesty would be taken for granted. James S. Haudenschilt was a highly provident

saver and money lender. His grandson lived in his home after the death of his mother until he became of age. Evidently to avoid the expense involved, he neither employed counsel nor made the regular periodic settlements required by statute. He kept what is termd a "cash book", in which he entered what, in his opinion, were transactions affecting his ward's property. His ward's cash was deposited in the guardian's individual bank account. To that extent their property was commingled. In the settlement of March 1, 1934, before Chapman, commissioner, James Paul Haudenschilt apparently was dissatisfied with some of the loans which his grandfather, as guardian, had made of money belonging to him. In order to meet this situation fairly his grandfather brought before Chapman his ward's as well as his own securities, giving the ward the right to pick and choose as he saw- fit. This the ward did. In the transfers involved, the ward took some notes payable to James S. Haudenschilt and the guardian acquired as his individual property notes payable to himself as guardian. Therefore, in the collection of these notes left on the old gentleman's hands in the final settlement in some instances he continued, after the final settlement, to use the title "guardian" in conducting business in fact his own. One of these instances the plaintiff here includes in his attempt to surcharge and falsify his grandfather's account as his guardian.

In addition to there having been no appeal from the guardian's settlement before Chapman, the estate of James S. Haudenschilt was settled before L. S. Hall, Commissioner of Accounts of Wetzel County. The contentions of the plaintiff here growing out of the guardianship of James S. Haudenschilt were laid before Hall, commissioner of accounts, as a claim against the latter's estate. The commissioner of accounts reported that the estate of the guardian had been settled before A. C. Chapman, that the settlement had become conclusively binding because its confirmation by the county court had not been appealed from. Under Code, 44-2-19, the claim of

the plaintiff could not be reheard and relitigated in a proceeding to settle the personal estate of his guardian. The report of Commissioner Hall was confirmed by the County Court of Wetzel County, and the order was not appealed from within the statutory period. Instead, plaintiff brought this proceeding to surcharge and falsify the executor's account in the settlement of his grandfather's personal estate, and also to surcharge and falsify his guardian's settlement of accounts before Chapman, commissioner, as an additional charge alleging that the settlement before Chapman was void due to a collusive fraudulent understanding between him and James S. Haudenschilt, guardian. The allegations of the bill of complaint quoted in the majority opinion are clearly too general and vague to be regarded as a sufficient averment of fraudulent conduct to warrant relief. Before equity will lend its ear to what would otherwise be regarded as slander and vituperation, the charge of fraud is required to be definite and specific, and these charges do not come within the rule.

Concerning charges of fraud against the dead, as here, the Supreme Court of Appeals of Virginia, quoting Mr. Justice Story's opinion in *Prevost* v. *Gratz,* 6 Wheat. 481, 5 L. Ed. 311, had this to say in *Russell's Ex'rs.* v. *Passmore,* 127 Va. 475, 103 S. E. 652:

"Fraud or breach of trust ought not lightly to be imputed to the living; for the legal presumption is the other way; and as to the dead, who are not here to answer for themselves, it would be the height of injustice and cruelty to disturb their ashes, and violate the sanctity of the grave, unless the evidence of fraud be clear, beyond a reasonable doubt."

It is not now contended that there is a particle of testimony indicating fraud affecting Commissioner Chapman's report, and it was never contended that the order of the county court confirming it, which, I believe, is the controlling feature, was in any way irregular. The remaining allegations of fraud concerning the guardian's transactions I think are too indefinitely charged, but con-

ceding that they do come within the rule, they do not charge fraud in the procurement of the entry of the commissioner of account's report, but, in effect, charge that the plaintiff was misled into believing that the report of Chapman was not to be the final report, and that there would be further proceedings before final entry was made. It is rather difficult to believe that the plaintiff went before Chapman with his grandfather after having become twenty-one years of age, and there accepted delivery of what Chapman's report called the entire assets of his estate, amounting to $9,051.03, substituting in lieu of certain securities that he thought might be questionable, securities of his grandfather, accepting his grandfather's thirty-day note for the difference of $172.88, and thereafter received a copy of Chapman's report, to which he did not except but permitted its confirmation, and now attacks that settlement as having been induced by fraud on the part of his grandfather, asserting that he believed it was not final.

I agree with the statement in the majority opinion that if there were fraud in the procurement of the order of the county court, confirming the report of its commissioner of accounts, then that order may be set aside in a chancery proceeding. I emphatically disagree with the statement that a proceeding to surcharge and falsify is one in which that can be brought about. To surcharge and falsify an account, the existence of the account necessarily continues. The proceeding is corrective, in theory, by items. It cannot attack the account entirely. That can, of course, be done in chancery but upon different grounds. A defendant in chancery is entitled to know what he has to meet and inconsistent theories of relief cannot be presented in the same bill of complaint.

Before concluding the discussion of facts, I wish to group four of what I think are outstanding matters that throw considerable light upon the motive of the plaintiff when considered in their immediate sequence. They are:

Plaintiff was twenty-one years of age on February 28, 1934, and the settlement before Chapman, commissioner, was made, he swears, at his dead grandfather's instigation, on March 1, 1934, when he received, partly from his own property and partly from his grandfather in lieu of paper belonging to his estate that he did not think good, the sum of $9,051.03 in securities, and his grandfather's note for the difference of one hundred seventy-two dollars and eighty-eight cents.

Plaintiff was married May 5, 1934.

On April 25, 1937, his grandfather and former guardian died, leaving a will in which because of "very liberal" advancements made to plaintiff's father and received by him upon his father's death, the plaintiff received but one-third as much personal property as the other beneficiaries.

The bill of complaint in this case was filed at March Rules, 1939.

As to the second question, there can be no doubt but that a county court in West Virginia, acting as a court of probate, exercises what is called primary or exclusive original jurisdiction, in matters of probate and settlement regarded generally as proceedings in rem. Final orders in proceedings of that nature have attached to them the solemnity and finality of a judgment at law or a decree in chancery. That being so, final orders in them can be set aside only for actual, not constructive, fraud, as discussed in the majority opinion, though mistake of fact may also be sufficient.

Believing that the second question turns on the jurisdiction of our county courts and the effect of their final orders, I wish to preface it by saying that in the dissenting opinion which I prepared in the case of *Hustead* v. *Boggess*, 122 W. Va. 493, 12 S. E. 2d 514, will be found references to *DeVaughn* v. *DeVaughn*, 19 Gratt. 556, and *Dower* v. *Seeds*, 28 W. Va. 113, for discussion of the constitutional powers of county courts. In the same opinion

will be found references to our present Code, 44-2-19, and to the sections that, to my mind, were enacted for the purpose of implementing the exercise of our county courts' constitutional powers, and for the purpose of declaring that their decision in compliance with due process should be conclusive and binding upon all of the parties involved.

Prior to the adoption of the Code of 1931 this Court treated proceedings before county courts for the settlement of the accounts of fiduciaries as being ex parte only, attaching weight to the wording of the statute then in effect rather than to Section 24 of Article VIII of our Constitution, vesting in county courts probate jurisdiction and jurisdiction to settle accounts, neither in its nature being an ex parte matter. The statute in effect under which the conclusion in most of these cases was reached reads as follows: "The report to the extent to which it may be so confirmed, shall be taken to be correct, except so far as the same may, in a suit in proper time, be surcharged or falsified." Section 22, Chapter 87, Code. See *Van Winkle* v. *Blackford*, 33 W. Va. 573, 586, 11 S. E. 26. The phrase "in a suit in proper time" is governed by no express provision but it is to be observed that even at that time the statute permitted suits for the purpose of surcharging and falsifying, and not for the purpose of attacking in toto. An attack of that nature was left to the inherent jurisdiction of a court of chancery in which it would be entertained only for the same reasons that a final judgment might be set aside. If the confirmation of the report stood because not appealed from, or if appealed from, affirmed, it was to be taken as correct. If there were mistakes contained in the report, it could be surcharged or falsified in a proceeding brought for that purpose. The *Van Winkle* case indicates, by implication, I think incorrectly, that the jurisdiction of our county courts in probate matters and the effect of their findings in such matters, may be limited or extended by statute. That case seems to hold, however, that the *statutory* right to question a confirmed report, the order of con-

firmation having been allowed to become final, was then limited to proceedings to surcharge and falsify brought within a proper time.

I have already dealt with the constitutional jurisdiction of our county courts, which remains the same, the difference being that the Code of 1931 in its effort to implement the exercise of our county courts' jurisdiction to practicalize the settlement of estates, eliminated a good many statutory provisions, particularly the one under which the settlement of accounts was treated as ex parte only, that contributed to the then existing confusion and delay in matters of that nature. If the jurisdiction of the county court and the effect to be given its finding and judgment, is to be correlated with that of our circuit courts, and harmonized with the latter, as it must be, let us examine the constitutional jurisdiction of our circuit courts.

There is no question but that our Constitution at the time that the Legislature adopted the statute which this Court construed as granting county courts in settlement of fiduciary accounts ex parte jurisdiction only, expressly granted to circuit courts *supervisory* jurisdiction over county courts "by mandamus, prohibition or certiorari". That is our present constitutional provision applicable to inferior tribunals in general, the express provision concerning county courts having been eliminated. Supervisory jurisdiction, it would seem apparent, is in addition to appellate control, but is not the basis upon which are sustained proceedings to surcharge and falsify fiduciary accounts. Although none of the early cases correlate the jurisdiction of our county courts and that of our circuit courts, undoubtedly their conclusions were influenced by the fact that circuit courts were expressly granted so-called supervisory jurisdiction, and, consequently, some importance should be attached to the fact that in the amendment of Article VIII of our Constitution submitted in 1879 and subsequently adopted, county courts were eliminated from

the express provision concerning supervisory jurisdiction. Now the jurisdiction of county courts in probate matters is not constitutionally subject to the supervisory jurisdiction of our circuit courts. They may be made so by statute, but have not been. Proceedings to surcharge and falsify fiduciary accounts are subject to statute. That being so, it necessarily follows that the problem now before the Court is not the question of the inherent jurisdiction of a court of chancery, but is the question of construing Article 4, Section 20 and Section 19 of Article 2 of Chapter 44 of our present Code, and other sections of that Chapter read in connection therewith. If our circuit courts are not vested by constitutional provision or by statute with the right to supervise the proceedings of our county courts, then it would seem clear to my mind that their power or jurisdiction to surcharge or falsify fiduciary accounts, as distinguished from their power to review them on appeal, is subject to the finality of the county courts' orders or decrees. In my judgment the matter under consideration has been somewhat complicated and confused by the conflicting pronouncements of this Court in *Travis* v. *Travis,* 116 W. Va. 541, 182 S. E. 285; *Hansbarger* v. *Spangler,* 117 W. Va. 373, 185 S. E. 550; *In re Long's Estate,* 122 W. Va. 473, 10 S. E. 2d 791; *Steber* v. *Combs,* 121 W. Va. 509, 5 S. E. 2d 420; and *Hustead* v. *Boggess,* 122 W. Va. 493, 12 S. E. 2d 514. This confusion I hoped had been largely clarified by the opinion of this Court in *Ritchie* v. *Armentrout,* 124 W. Va. 399, 20 S. E. 2d 474. However, I fear, as I said in my dissenting opinion in the *Hustead* case, that the present position of this Court unnecessarily deprives a puzzling problem of what was hoped to be a final solution by virtue of the *Armentrout* opinion.

The principal question of law here involved was examined thoroughly and the Court's opinion, prepared by Judge Rose, fully covers the question of the probate powers of our county courts in the case of *Ritchie v. Armentrout,* 124 W. Va. 399, 20 S. E. 2d 474, the second syllabus of which reads as follows: "The order of a county court

confirming a report of a commissioner of accounts, regularly made, by which a claim against the estate of a decedent referred to him is disallowed, if not appealed from, is a bar to a motion for judgment by the claimant subsequently made on the same cause of action in a circuit court." In other words, the final order of a probate court carries the conclusiveness of a final judgment or decree. If that be so, it does not do to say that that is true on the law side but not in chancery. The difference is in the functions of the court: not a change in the order's status. It is true, of course, that a judgment may not be attacked on the law side, though a pretended judgment may be disregarded if plainly void on its face because then it is no judgment. A voidable judgment may be set aside in a court of chancery only, that fact not lessening one whit the clear allegation and proof of substantial grounds required, such as mistake, fraud, etc.

In addition to the foregoing, there is a marked distinction between fraud used in obtaining the entry of a judgment and fraud that affects the actual controversy before the court in the proceeding in which the judgment was entered: the first is a reason for setting aside the judgment, the second is not. The leading case in the United States based upon this distinction is *United States* v. *Throckmorton,* 98 U. S. 61, 25 L. ed. 93, the second syllabus of which reads as follows: "The frauds for which a bill to set aside a judgment or a decree between the same parties, rendered by a court of competent jurisdiction, will be sustained, are those which are extrinsic or collateral to the matter tried, and not a fraud which was in issue in the former suit." In *Moffat* v. *United States,* 112 U. S. 24, 32, 28 L. ed. 623, it was held that false testimony or forged documents used in the proceeding which terminated in the judgment under attack were not sufficient because they had been considered in the original proceeding. Here a decree is disregarded or set aside because in the, I think, mistaken opinion of the majority there was constructive fraud in two items of the guardian's confirmed report. The following cases

will be found to sustain the rule laid down in the *Throck-morton* and *Moffat* cases: *Price* v. *Smith*, (Tex. Civ. App.), 109 S. W. 2d 1144; *Camp* v. *Ward*, 69 Ver. 286, 37 A. 747, 60 Am. St. Rep. 929; *Bolden* v. *Sloss-Scheffield Steel & Iron Co.*, 215 Ala. 334, 110 S. 574, 49 A. L. R. 12-06; *Caldwell* v. *Taylor*, 218 Cal. 471, 23 P. 2d 758, 88 A. L. R. 1194; *Purinton* v. *Dyson*, 8 Cal. (2d) 322, 65 P. (2d) 777, 113 A. L.R. 1230; *Turley* v. *Owen*, 188 Ark. 1067, 69 S. W. 2d 882; *Sohler* v. *Sohler*, 135 Cal. 323, 67 P. 282; *Fealey* v. *Fealey*, 104 Cal. 354, 38 P. 49, 43 Am. St. Rep. 111; *Pico* v. *Cohn*, 91 Cal. 129, 25 P. 970, 27 P. 537, 25 Am. St. Rep. 159; *Donovan* v. *Miller*, 12 Ida. 600, 88 P. 82; *Graves* v. *Graves*, 132 Iowa 199, 109 N. W. 707, 10 L. R. A. (N.S.) 216; *Clark* v. *Clark*, 64 Mont. 386, 210 P. 93; *Michael* v. *American National Bank*, 84 Ohio St. 370, 95 N. E. 905, 38 L. R. A. (N.S.) 220; *Clinton* v. *Miller*, 96 Okla. 71, 216 P. 135; *Robertson* v. *Freebury*, 87 Wash. 558, 152 P. 5, L. R. A. 1916B 883; *Electric Plaster Co.* v. *Blue Rapids City Township*, 81 Kan. 730, 106 P. 1079, 25 L. R. A. (N.S.) 1237; *Hockenberry* v. *Cooper County State Bank,* 338 Mo. 31, 88 S. W. (2d) 1031.

The Iowa Supreme Court has applied the doctrine pronounced in the cited cases to the decree of a probate court confirming the final report of an executor in *Bradbury* v. *Wells,* 138 Iowa 673, 115 N. W. 880, 16 L. R. A. (N.S.) 240, the opinion reading in part: "An order discharging an executor may be impeached for fraud or mistake clearly and satisfactorily established will be admitted; but it is not every fraud, or every mistake which will have that effect. The matter complained of must be something extrinsic or collateral to the matter tried upon the original hearing, and not a fraud or mistake in the very matter on which the judgment was entered or order made. *Tucker* v. *Stewart*, 121 Iowa 716, 97 N. W. 148; *Graves* v. *Graves*, 132 Iowa 199, 10 L. R. A. (N.S.) 216, 109 N. W. 707; *United States* v. *Throckmorton*, 98 U.S. 61, 25 L. ed. 93." The discussion in *Murrel* v. *Murrel*, 21 S. C. Eq. (2 Strobh) 148, 49 Am. Dec. 664, as to the reopening or setting aside of an approved account because

of allegations and proof of fraud, misrepresentation, or concealment of facts is quite apt to this case.

The Supreme Court of Oregon in the case of *Froebrich* v. *Lane*, 45 Or. 13, 76 P. 351, in speaking of the probate jurisdiction of its county court and of a statute similar to ours, and the extent to which matters considered in its findings which were reviewable by appeal, would be heard in a court of chancery in a proceeding to set them aside, had this to say: "So that the fact that the county court is accorded exclusive jurisdiction in the first instance has no peculiar emphasis or force to differentiate its final orders or decrees from those of any court of record possessing exclusive jurisdiction within its compass. The equitable remedy of which we are now treating has its just limitations, however. It cannot be utilized for the correction of errors and irregularities, and, where the party has had an opportunity to be heard in the original proceeding and to have the matters revised on appeal, but has neglected to avail himself thereof, he is not entitled to redress in the equitable forum. *Galbraith* v. *Barnard*, 21 Or. 67, 26 Pac. 1110; *Handley* v. *Jackson*, 31 Or. 552, 50 Pac. 915, 65 Am. St. Rep. 839; *Conant's Estate*, 43 Or. 530, 73 Pac. 1018."

I do not think that the decision of this case turns upon the question of doing away with proceedings to surcharge and falsify fiduciary accounts. It does involve the question of whether the possibility of that proceeding is to be permitted to lurk until barred by laches, with its shadowy uncertainty, or is to be limited to a specific period so that fiduciaries and business in general may know beyond doubt when all possible liability of personal representatives and their bondsmen has ended and estates are settled in all respects. I believe that the Legislature plainly intended to make confirmation of a settlement that under the terms of the statute has become irrevocably final, conclusive as to all parties included in the commissioner's notices or who have appeared before him. A settlement does not become irrevocably final until the time to apply

for a writ of error to the order of confirmation has expired or four months after its entry. *In Re Estate of Edwin A. Durham,* 119 W. Va. 1, 191 S. E. 847. Therefore, in my opinion, a proceeding to surcharge and falsify may, under the holding of this Court in *Travis* v. *Travis,* 116 W. Va. 541, 182 S. E. 285, that equity can interrupt the jurisdiction of county courts in settlement proceedings, be brought at any time between the completion of the commissioner's report, and the expiration of four months after the order of confirmation. This, of course, would not apply to a proceeding to set aside the order of confirmation for a reason that would make a final judgment or decree voidable.

For the foregoing reasons, believing that the majority of the Court has erred in considering both the facts and the law, I respectfully dissent. I am authorized to say that Judge Riley concurs in this memorandum.